Apr 18 07 02:37p       Spectrum                    8   385-1525

related to the operation of the water company as determined by the Wheeler Managing Director.

(c) Pump, pipeline and motor repairs.  All costs of repairs, servicing, replacing water pump motors or component parts shall be the responsibility of Wheeler. The cost of installation of water meters to determine the amount of water usage reserved by Leslie shall be paid for by Wheeler.  The metering device shall be read as part of the ongoing management in order to determine the water usage and the calculation of the cost of water utilized by Leslie. All capital costs, including, drilling the three wells or replacement wells shall be paid for by Wheeler. Wheeler Canyon Partners will connect the water distribution line to the existing Leslie water line at the Hampton Canyon Bridge.

(d) Meter expenses.  Wheeler shall at its sole cost and expense, install and keep in good operation water meters or other devices as the owners may agree are needed to measure the amount of water delivered from this well system.

(e) Security.  Wheeler agrees to install necessary security fencing around its facilities as well as a security gate on the access easement to preclude access to the Leslie property from the Wheeler property by non-authorized people.

5)  Water use reserved for Leslie.  As partial consideration for the granting of these easements and the right to pump water related to the drilling of these three wells, Leslie shall be entitled to a reasonable amount of water for reasonable agricultural uses.  Any and all water delivered to the Leslie property cited above shall be run through a meter.

The cost for Leslie's water shall not be at the retail price that Wheeler, Its successors or assigns, shall charge retail customers.  Rather the cost shall be the lift cost which is  the energy costs for extraction and delivery of the water.  Leslie agrees to pay such monthly or periodic billings for its water use within 30 days.  Unpaid bills shall bear interest at the rate of 10% per year.  Wheeler shall submit periodic bills to Leslie for its water use.

In periods of draught Leslie agrees to be bound by any reasonable rules and regulations regarding conservation or pro rata reduction of water use required by all customers of the water company.

All water taken and used by Leslie from these wells shall not be piped off the Leslie property to any other property.  In addition, this right is personal to Leslie or to any entity or direct lineal decedents.  If Leslie sells, transfer or assigns its ownership interest to a non-related individual or entity, this agreement for water to be charged at cost is terminated.  Any successor, user will be bound by this agreement but will be charged the then existing for profit water rate for water delivered to the Leslie property.

6.) Profit and royalty participation by Leslie: Leslie shall, as additional consideration for the granting of these water wells easements, receive 12.5% of the net profit from water sales from Wheeler and/or its successor water

company on a yearly basis.  12.5% of the net profit shall be determined through standard accounting practices based on the hard costs for the operations of the water company. These hard costs/direct costs include the following items; installation and materials costs including pipes, pumps, tanks, wells, meters and other equipment.  Hard costs also include operational costs including energy costs, regulatory permitting costs and labor costs.

This compensation shall be paid on a monthly basis and computed on a per acre-foot basis.  Annually, in the month of February, Wheeler and/or its assignee water company shall supply a copy of its profit and loss operating statement to Leslie accounting for all costs of operation and for determination of net profit from water sales Within 30 days of that report, the company will provide Leslie an adjustment payment for Leslie's 12.5% net profit participation as derived from normal accounting practices and its cost of operation for its water sales on an annual basis.

In addition, Leslie shall receive a royalty amounting to $27.00 per acre foot of water pumped from the wells on his property. This royalty will be tied to the Consumer Price Index and adjusted on a annual basis. This Royalty shall be paid on a monthly basis.


    In addition, to 12.5% of the net profit of water sales, Leslie shall also be a 12.5% owner of the water company.  If the water company is sold by Wheeler or its successors to a non-related third party in an ordinary business transaction for the sale of the water company, Leslie shall be entitled to 12.5% of the net sales proceeds from any such sale.  Any sale of the company shall be at an appraised value or higher. Net sale proceeds shall be provided from a closing statement of any escrow involved for the sale of the water company.

    7.  Insurance and indemnification. The parties shall take all precautions necessary for the safety of and prevention to damage property of either the dominant or the servient tenant  and to the well site, facilities and easements in the water well system and for the safety and prevention of injury to persons.  Each party hereto shall procure and thereafter maintain general liability insurance and each party shall name the other party as an additional insured.  Each party agrees to maintain insurance in the amount not less than two million dollars and a certificate of insurance shall annually be supplied to each party by the other party to this agreement.

    Each owner and party to this agreement shall hold harmless an indemnify the other party, their successors or assigns to this agreement from any and all claims and liabilities for the death of or injury to persons on or for property damages may in whole or part arise from the use of the water well sites by each owner, his employees, invites or licensees.

    Each owner shall reimburse and hold each remaining party herein harmless from any actual damage to property or crops or any loss of income sustained as a result thereof, arising by an owners exercise of his rights of ingress and egress or related rights from the use of the servient tenants land in the installation, maintenance and repair of pipelines, conduits, utilities, or water wells.

8. Waiver: One or more waivers of any covenant, term or condition of this agreement by any party to this agreement shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

9. Attorney Fees:  If any party to this agreement employs any attorney to enforce the previsions of the agreement, the prevailing party (whether by negotiations, settlement or litigation) shall be entitled to recover reasonable attorney fees from the other owner or owners or parties in addition to any other recovery to which the prevailing party may be entitled.

   Wheeler has employed the services of Lindsay F. Nielson to draft this water agreement.  Wheeler shall be responsible for all fees incurred in the preparation, execution of this agreement and subsequent documents.  If Leslie wishes to have this agreement reviewed by independent counsel, such costs shall be at Leslie's expense.

10. Binding on Successors.  This agreement shall be binding and shall inure to the benefit of any personal representative, heirs, assignee or successor in interest to the parties to this agreement.  It is intended that any covenant herein shall run with the land.

In the event of death of a principal party to this agreement or transfer of ownership to another entity, the remaining parties shall be notified within 90 days of the person responsible to assume the deceased or the newly assigned entities interest.

11. Arbitration.  In the event of any controversy or dispute between the parties arising out of this agreement, parties agree to submit their dispute to arbitration.  The Presiding Judge of the Superior Court of Ventura shall appoint a single retired Judge of the Superior Court to hear the matter in the event that the parties cannot agree to a singe arbitrator.

12.     Venues and Governing Law.  This agreement is made and entered into in Ventura County, California and it is to be performed in said county.  The laws of the State of California should govern the validity, performance and enforcement of this agreement.

13.     Entire Agreement.  This agreement constitutes the entire agreement between the parties hereto regarding the water well site and easements.  It supercedes all prior agreements and amendments thereto including negotiations, statements, promises and understandings, if any, relating to this water well agreement.  Any prior negotiations, statements, promises or understandings shall not be used, interpreted or construed in interpreting this agreement.

14. Notices. All notices which may be or are required to be given under this agreement shall be in writing and should be personally delivered or sent first class to each owner. Notices shall be sent to the following:

Wheeler Canyon Partners, LLC
11601 Wilshire Blvd., Suite 2240
Los Angeles, CA 90025


Robert G. Leslie and Marilyn B. Leslie
3739 Wheeler Canyon Road
Santa Paul, CA 93060

Parties may from time to time change their address upon giving written notice to the other party.


15. Amendments. Any amendment to this agreement shall be in writing and signed by all parties hereto.


16. Counterparts. This Water Well Agreement may be executed in one or more counterparts which, all taken together, shall constitute the agreement; provided, however this agreement shall not be of any force or effect unless executed by all parties hereto.


17. Further cooperation. It is recognized that certain easements will be drafted and need to be recorded. The parties agree that such further cooperation and execution of documents to carry out this agreement shall be done in a prompt manner.


18. Future Intended Usage. It is the mutual intention of the parties to this agreement that the formation of this new water company and its successors, shall be the main provider of agricultural and domestic water to both the Leslie property and the Wheeler Canyon Partnership property upon future development. To this end, both properties shall have the priority of use from water produced from the wells drilled under this Well Site Agreement. Water prices from the water company to be formed for future owners of these two properties shall be at the same rate as scheduled rates for all other local users.

This agreement is executed by the undersigned parties in Ventura, California

Wheeler Canyon Partners, LLC

By _____    Date: 5·2·07
Managing Member

_Robert G. Leslie_    Date: 04/13/07
Robert G. Leslie

Date: _Marilyn B. Leslie_
Marilyn B. Leslie

4/13/2007

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of __LOS Angeles__ _____ } ss.

On __MAY 2, 2007__, before me, __Amy Rosen__
      _Date_                          _Name and Title of Officer (e.g., "Jane Doe, Notary Public")_
personally appeared __William J. Chadwick__ _____
                           _Name(s) of Signer(s)_

**AMY ROSEN**
**COMM. # 1641199**
**NOTARY PUBLIC-CALIFORNIA**
**LOS ANGELES COUNTY**
**My Comm. Exp. Jan. 27, 2010**

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
                          _Signature of Notary Public_

Place Notary Seal Above

----------------------- **OPTIONAL** -----------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _____

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**
Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 1997 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

# Exhibit C

DECLARATION OF LINDA S. RAREY

I, Linda Rarey, do hereby declare as follows:

    1. I am over the age of 18 years and not a party to this action. I have personal knowledge of the facts stated herein and, if called as a witness, would competently testify thereto.

    2. I worked as an agent for the Federal Bureau of Investigation for 23 years, from 1987 through September 2010. During my years of service, I investigated international financial crimes both here and abroad.

    3. Approximately 18 months past I was asked to review Bankruptcy Case Number No. 9:08-bk-11949-RR, in re ROBERT GWEN LESLIE and MARILYN BEVERLY LESLIE, for the possible fraudulent conduct of a Trustee in a Bankruptcy Proceeding. The name of the Trustee is Sandra Macbeth and the Bankruptcy Case involved was initially a Chapter 11 case that was converted to a Chapter 7. When I concluded my investigation I prepared written report of my findings. I concluded that Ms. Macbeth did in fact act with malfeasance and otherwise violated her duties as the Trustee. A full true and correct copy of my written report is attached hereto Marked Exhibit A and by this reference incorporated herein as fully as then set forth at length. In my report I reference documents and such documents are also included.

    4. I declare under penalty of perjury under the laws of the State of California and the United States of America that all of the forgoing is true and correct.

Executed this 13th day of November, 2014 in Chatsworth, California.

Linda S. Rarey
10215 Variel Avenue, Unit 17
Chatsworth, CA 91311

In re
ROBERT GWEN LESLIE and MARILYN
BEVERLY LESLIE,
Debtors

Case No. 9:08-bk-11949-RR

The following sets forth the findings of Linda S. Rarey after a review of the above noted bankruptcy file.

This matter involves almost 2000 acres of land in Santa Paula, California. The background of the matter was that the owner, Robert Leslie, had made an investment back in the late 1970's which he pulled out of because he felt it wasn't performing well enough. He sustained a loss, and legally claimed the loss on his income tax. Well past the statute of limitations, the IRS issued a Notice of Deficiency, alleging that he had made the investment to purposely accrue a loss for tax purposes. That ruling was appealed, and he lost. While I have some questions regarding the way the IRS exceeded the statute of limitations (which seems to have been addressed by the Supreme Court in United *States v. Home Concrete*, although Mr. Leslie is still being held liable for the assessment, perhaps due to his inability to hire appropriate legal counsel because all is funds are tied up in the bankruptcy), Mr. Leslie made some bad decisions, and didn't deal with the liens. He subsequently filed a Chapter 11 Bankruptcy, which was converted to a Chapter 7 by the Bankruptcy Court in Santa Barbara, in spite of the fact that there was more than enough value in the estate to cover the debt. The IRS was the sole creditor in the bankruptcy.

Regardless of bad decisions made by Mr. Leslie, in reviewing the documentation it was very clear that the trustee was not handling the estate in accordance with the Handbook for Bankruptcy Trustees. Furthermore, it became clear to me that the "game" for the trustees was to sell everything off as quickly as possible, with no real effort to determine actual values. The trustee's filings seem to be "rubber stamped" by the judges without much, if any, inquiry to the validity of the information.

In the Leslie matter, I noticed that the Handbook for Chapter 7 Bankruptcy Trustees states:

## C.  STATUTORY DUTIES OF A TRUSTEE

Although this Handbook is not intended to be a complete statutory reference, the trustee's primary statutory duties are set forth in part in section 704 of the Bankruptcy Code and are detailed more thoroughly in other parts of this Handbook. **A chapter 7 trustee must be personally involved in carrying out the trustee's duties and other fiduciary responsibilities. 28 U.S.C. § 586(a).** If the trustee is or becomes unable to be directly involved in the performance of these duties and responsibilities for any time period, the trustee must advise the United States Trustee immediately. 28 U.S.C. § 586(a), 28 C.F.R.§ 58.3(b).

http://www.justice.gov/ust/eo/ust_org/ustp_manual/

The trustee in this matter allowed a contract to be drawn up between her and Wells Fargo ceding the water rights to a 700 acre parcel of land owned by the Leslies to Wells Fargo (with no compensation to the Leslie estate), who had foreclosed on the adjacent property. This transaction resulted in a significant devaluation of the property. A deposition of the trustee regarding the transaction yielded responses of "I dunno" seems to be pretty solid evidence of her lack in this area of administrating the estate.

There are also directions in the manual regarding the handling of large amounts of funds in the Trustee account. Section 5, paragraph E directs as follows:

## CONTROLS OVER ESTATE BANK ACCOUNTS AND INVESTMENT OF ESTATE FUNDS

The trustee must immediately open a separate account for each estate as soon as funds are received. The accounts must be maintained under the direction and control of the trustee at all times. 28 U.S.C. § 586. Accounts may only be maintained at depositories which have agreed to abide by the requirements[11] established by the United States Trustee. The trustee must notify the United States Trustee of the identity of the banking institution in which estate funds are held and thereafter must immediately notify the United States Trustee of an intent to transfer estate accounts to another banking institution. 28 U.S.C. § 586.

Generally, a trustee should utilize a single banking institution and should initially deposit funds to an interest-bearing account in order to maximize the return to creditors. The trustee must monitor bank account activity on a regular and ongoing basis. 28 U.S.C. § 586.

## TYPES OF ACCOUNTS

Section 345(a) provides that a trustee may invest monies of an estate. Estate funds must be deposited or invested in order to provide a maximum, reasonable net return to creditors.

a.    Interest Bearing Accounts

Interest-bearing estate accounts are either money market accounts or savings accounts. In considering the reasonableness of the return on interest-bearing estate bank accounts, the trustee may consider the following factors: (1) size of the account; (2) expected duration of the deposit; (3) size of the interest rate differential between the bank's rate and comparable market rates in other institutions or investment vehicles; (4) whether the trustee has negotiated with the bank for the highest possible interest rate; (5) interest rates offered by other banks that provide bankruptcy services; and (6) the value and cost of software and other services provided by the trustee's bank.

# Exhibit D

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 1/06)

CALIFORNIA
ASSOCIATION
OF REALTORS®

Date _April 18, 2006_ , at _____ _Santa Paula_____ , California.
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _Olympic Land Development Co._ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _1,794.11 Acres of land, Santa Paula  CA  93060_ ,
      _____ , Assessor's Parcel No. _See Attached #s_ , situated in
      _Santa Paula_ , County of _Ventura_ , California, ("Property").
   C. **THE PURCHASE PRICE offered is** _Twenty-Six Million Two Hundred Fifty Thousand_
      Dollars $ _26,250,000.00_
   D. **CLOSE OF ESCROW** shall occur on _July 10, 2006_ (date) (or ☒ _90_ Days After Acceptance).
2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _260,000.00_
      to the agent submitting the offer (or to ☐ _____ ),
      (or ☐ _____ ), made payable to _Fidelity National Title Co._ ,
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      (or ☐ _____ ), with
      Escrow Holder, (or ☐ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ _200,000.00_
      within _____ Days After Acceptance, or ☒ _1 day after removal of contingencies_ .
   C. **FIRST LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
          interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate
          of _____ %, balance due in _____ years, amortized over _____ years. Buyer shall
          pay loan fees/points not to exceed _____ . (These terms apply whether the designated loan
          is conventional, FHA or VA.)
      (2) ☐ FHA  ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
          Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
          ☐ not to exceed $ _____ . Seller shall pay the cost of lender required Repairs (including
          those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed
          $ _____ . (Actual loan amount may increase if mortgage insurance premiums, funding
          fees or closing costs are financed.)
   D. **ADDITIONAL FINANCING TERMS:** ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, . . . . . . . . .$ _____
      (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
      _____
      _____
   E. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . . $ _25,790,000.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _26,250,000.00_
   G. **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. **LOAN CONTINGENCY REMOVAL:** (i) Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, ☒ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or ☐ _____ ) Days After Acceptance.
   K. ☒ **NO LOAN CONTINGENCY** (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☒ **ALL CASH OFFER** (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at _noon_ ☐ AM ☐ PM, ☒ on the date of Close Of Escrow;
      ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( _DR_ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

RPA-CA REVISED 1/06 (PAGE 1 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: Cynthia Loughman & Eugene Ma   Phone: (805)644-1242   Fax: (805)648-2424   Prepared using WINForms® software
Broker: RE/MAX Gold Coast REALTORS   1300 Eastman Ave, 101 , Ventura     CA 93003

*1,794.11 Acres of land*

Property Address: *Santa Paula, CA  93060*          Date: *April 18, 2006*

C. **Tenant-occupied property: (i)** Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR **(ii)** (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR **(iii)** (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS** (if checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**
   (1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____ *Taylor Pest Control* _____ , a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☒ the following other structures or areas *Home adjacent to main home & any and all other homes on subject parcels* . The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (if checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**
   (1) ☐ Buyer ☒ Seller shall pay to have septic or private sewage disposal systems inspected *By licensed septic related comp*
   (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
   (3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by *Property I.D. of California* .
   (4) ☐ Buyer ☒ Seller shall pay for the following inspection or report *Phase One Environmental Hazard Report*
   (5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
   (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
   (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. *If any*

D. **ESCROW AND TITLE:**
   (1) ☒ Buyer ☒ Seller shall pay escrow fee *1/2 each*
       Escrow Holder shall be *Fidelity National Title-Ronda Holde*
   (2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
       Owner's title policy to be issued by *Fidelity National Title*
       (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**
   (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
   (2) ☒ Buyer ☒ Seller shall pay City transfer tax or transfer fee *1/2 each if any*
   (3) ☐ Buyer ☐ Seller shall pay HOA transfer fee *n/a*
   (4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees *n/a*
   (5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ *each home* , of a one-year home warranty plan,
       issued by *Auto Pte/10B/P*
       with the following optional coverage: *roof coverage*
   (6) ☐ Buyer ☐ Seller shall pay for _____
   (7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).
   (2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
   (3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering these items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 2 OF 8)

Buyer's Initials ( _US_ )( ____ )
Seller's Initials ( ____ )( ____ )
Reviewed by ____ Date ____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**

Robert & Marii

1,794.11 Acres of land
Property Address: <u>Santa Paula, CA  93060</u>                                           Date: <u>April 18, 2006</u>

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)
(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.
   B.  NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
   C.  DATA BASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
6.  **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
   A.  SELLER HAS: 7 (or □ _____ n/a _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).
   B.  If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or □ _____ n/a _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).
7.  **CONDITIONS AFFECTING PROPERTY:**
   A.  Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close of Escrow.
   B.  SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).
   C.  NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
   D.  NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.
8.  **ITEMS INCLUDED AND EXCLUDED:**
   A.  NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
   B.  ITEMS INCLUDED IN SALE:
      (1)  All EXISTING fixtures and fittings that are attached to the Property;
      (2)  Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
      (3)  The following items: <u>Any farm equipment (Seller to provide list to Buyer within 5 days of</u> <u>acceptance), well pumps, supplies, stoves, dishwashers & any other built-in appliances</u>
      (4)  Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
      (5)  All items included shall be transferred free of liens and without Seller warranty.
   C.  ITEMS EXCLUDED FROM SALE: _____
9.  **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A.  Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B.  Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 3 OF 8)

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )

Reviewed by _____  Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

Robert & Maril

1,794.11 Acres of land

Property Address: Santa Paula, CA  93060 _____ Date: April 18, 2006

**10. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**12. TITLE AND VESTING:**

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**13. SALE OF BUYER'S PROPERTY:**

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B.  ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).

A. **SELLER HAS: 7 (or ☒ 14 )** Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and 5B, 6A, 7B and 12.

B. (1) **BUYER HAS: 17 (or ☒ 60 )** Days After Acceptance, unless otherwise agreed in writing, to:

(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and

(ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections/ reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ ___ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

(2) **Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

(3) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.

(4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☒ 72 ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( DB )( )
Seller's Initials ( )( )

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 4 OF 8)

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**

Robert & Maril

1,794.11 Acres of land

Property Address: Santa Paula, CA  93060                                                Date: April 18, 2006

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.
BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)

| Buyer's Initials DB / | Seller's Initials / |
|---|---|

17. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials DB / | Seller's Initials / |
|---|---|

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 5 OF 8)

| Buyer's Initials DB ( )( ) |
|---|
| Seller's Initials ( )( ) |
| Reviewed by _____ Date _____ |

Robert & Maril

*1,794.11 Acres of land*
Property Address: Santa Paula, CA  93060                                    Date: April 18, 2006

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.
19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).
20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.
23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.
24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.
25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____)
    C. ☑ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. _____
26. **DEFINITIONS:** As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    F. "Days" means calendar days, unless otherwise required by Law.
    G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
    L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when appropriate.

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 6 OF 8)

| Buyer's Initials ( PD )( ) |
| Seller's Initials ( )( ) |
| Reviewed by _____ Date _____ |



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**                          *Robert & Maril*

Property Address: *1,794.11 Acres of land*
*Santa Paula, CA  93060*                                       Date: *April 18, 2006*

**27. AGENCY:**

**A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

**B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

**C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent _____ *Re/Max Gold Coast Realtors* _____ (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.

Selling Agent _____ *Re/Max Gold Coast Realtors* _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 7 OF 8)

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**

Robert & Marti

*1,794.11 Acres of land*
Property Address: <u>Santa Paula, CA  93060</u>                        Date: <u>April 18, 2006</u>

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ <u>Cynthia Loughman</u> _____, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by <u>April 19, 2006</u> (date), at _____ <u>7:00</u> _____. ☐ AM ☒ PM).

Date <u>April 18, 2006</u>                                     Date _____
BUYER _____                                     BUYER _____
<u>Olympic Land Development Co.</u>                            _____
(Print name)                                                 (Print name)
_____
(Address)

**32. BROKER COMPENSATION FROM SELLER:**
  A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
  B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**33. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Date _____                                      Date _____
SELLER _____                                     SELLER _____
<u>Robert G. Leslie</u>                                        <u>Marilyn B. Leslie</u>
(Print name)                                                 (Print name)
_____
(Address)

( _____ )   **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials)   agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
  A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
  B. Agency relationships are confirmed as stated in paragraph 27.
  C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
  D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) <u>Re/Max Gold Coast Realtors</u> _____ License # <u>01220383</u>
By <u>Cynthia Loughman</u> _____ <u>Cynthia Loughman</u> License # <u>00453659</u>   Date <u>April 18, 2006</u>
Address <u>1500 Palma Drive</u> _____ City <u>Ventura</u> _____ State <u>Ca</u> _____ Zip <u>93003</u>
Telephone <u>(805) 648-2424</u> _____ Fax <u>(805) 648-7011</u> _____ E-mail <u>Cynthi31@aol.com</u>

Real Estate Broker (Listing Firm) <u>Re/Max Gold Coast Realtors</u> _____ License # <u>01220383</u>
By <u>Cynthia Loughman</u> _____ <u>Cynthia Loughman</u> License # <u>00453659</u>   Date <u>April 18, 2006</u>
Address <u>1500 Palma Drive</u> _____ City <u>Ventura</u> _____ State <u>Ca</u> _____ Zip <u>93003</u>
Telephone <u>(805) 648-2424</u> _____ Fax <u>(805) 648-7011</u> _____ E-mail <u>Cynthi31@aol.com</u>

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $_____ ),
counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder <u>Fidelity National Title Co.</u> _____ Escrow # _____
By _____ <u>Ronda Holden</u> Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate.  License # _____

( ____ / ____ )   **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials)   _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RPA-CA REVISED 1/06 (PAGE 8 OF 8)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)**                Robert & Maril



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 10/02)

Property Address: 1,794.11 Acres of land, Santa Paula CA 93060 ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)

2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)

3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.

4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( ) ( )
Seller's Initials ( ) ( )
Reviewed by _____ Date _____



BIA REVISED 10/02 (PAGE 1 OF 2)

## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 2)

Property Address: *1,794.11 Acres of land, Santa Paula  CA  93060*                                          Date: *April 18, 2006*

5.  **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6.  **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7.  **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8.  **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9.  **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10.  **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11.  **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12.  **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13.  **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14.  **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15.  **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

> Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.

_____     04/18/2006     _____
Buyer Signature                        Date        Buyer Signature                     Date
*Olympic Land Development Co.*

_____     _____          _____     _____
Seller Signature                       Date        Seller Signature                    Date
*Robert G. Leslie*                                 *Marilyn B. Leslie*

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by | | Date | |
|---|---|---|---|

BIA REVISED 10/02 (PAGE 2 OF 2)

**BUYER'S INSPECTION ADVISORY (BIA PAGE 2 OF 2)**



**CALIFORNIA ASSOCIATION OF REALTORS®**

# ADDENDUM

### (C.A.R. Form ADM, Revised 10/01)

No. _One_

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement,  ☐ Business Purchase Agreement,  ☐ Residential Lease or Month-to-Month Rental
Agreement,  ☐ Vacant Land Purchase Agreement,  ☐ Residential Income Property Purchase Agreement,  ☐ Commercial Property
Purchase Agreement,  ☐ other _____

dated _____, on property known as _Approx. 1800 Acres Wheeler Canyon Rd..._

in which _Olympic Land Development Co._ is referred to as ("Buyer/Tenant")
and _Robert G. Leslie , Marilyn B. Leslie_ is referred to as ("Seller/Landlord").

_1. C.A.R. Form RPA-CA, Revised 1/06 (1.b): APN #s owned by subject Sellers referenced above_
_and acreage of each are:_     038-0-080-015     _552.62 Acres_
                 038-0-080-025     _213.87_
                 062-0-031-055     _1.07_
                 062-0-070-065     _346.34_
                 064-0-070-025     _189.12_
                 062-0-070-055     _491.09 . Total Acreage: 1,794.11_

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _April 18, 2006_            Date _____

Buyer/Tenant _Olympic Land Development Co._     Seller/Landlord _Robert G. Leslie_

Buyer/Tenant _____     Seller/Landlord _Marilyn B. Leslie_

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

**SURE TRAC**
The System for Success™

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

EQUAL HOUSING OPPORTUNITY

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

### ADDENDUM (ADM-11 PAGE 1 OF 1)

RE/MAX Gold Coast REALTORS - 1300 Eastman Ave, 101   Ventura   CA 93003
Phone: (805)644-1242     Fax: (805)648-2424     Cynthia Loughman & Eugene Ma        Robert & Maril

# Exhibit E

| Form **656**<br>(Rev. May 2012) | Department of the Treasury - Internal Revenue Service<br>## Offer in Compromise |
|---|---|

| **Attach Application Fee and Payment** *(check or money order)* here. | **IRS Received Date** |
|---|---|

**Section 1**   Your Contact Information

Your First Name, Middle Initial, Last Name
Robert Leslie

If a Joint Offer, Spouse's First Name, Middle Initial, Last Name
Marilyn Leslie

Your Physical Home Address *(Street, City, State, ZIP Code)*
3739 Wheeler Cyn Rd.Santa Paula. CA 93060

Mailing Address *(if different than above or Post Office Box number)*


Business Name


Your Business Address *(Street, City, State, ZIP Code)*


| Social Security Number (SSN)<br>(Primary) | (Secondary) | Employer Identification Number<br>(EIN) | (EIN not included in offer) |
|---|---|---|---|
| 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 | 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 | | |

**Section 2**                                                                    **Tax Periods**

▶ To: **Commissioner of Internal Revenue Service**

In the following agreement, the pronoun "we" may be assumed in place of "I" when there are joint liabilities and both parties are signing this agreement.

I submit this offer to compromise the tax liabilities plus any interest, penalties, additions to tax, and additional amounts required by law for the tax type and period(s) marked below:

[X] 1040 Income Tax-Year(s)   1980

[ ] 1120 Income Tax-Year(s)

[ ] 941 Employer's Quarterly Federal Tax Return – Quarterly period(s)

[ ] 940 Employer's Annual Federal Unemployment (FUTA) Tax Return – Year(s)

[ ] Trust Fund Recovery Penalty as a responsible person of *(enter corporation name)*
for failure to pay withholding and Federal Insurance Contributions Act taxes (Social Security taxes), for period(s) ending

[ ] Other Federal Tax(es) [specify type(s) and period(s)]

**Note:** If you need more space, use attachment and title it "Attachment to Form 656 dated                    ." Make sure to sign and date the attachment.

**Section 3**                                                                    **Reason for Offer**

[ ] **Doubt as to Collectibility** - I have insufficient assets and income to pay the full amount.

[X] **Exceptional Circumstances (Effective Tax Administration)** - I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable. I am submitting a written narrative explaining my circumstances.

| Section 3 *(Continued)* | Reason for Offer |
| --- | --- |

**Explanation of Circumstances** *(Add additional pages, if needed)*

The IRS understands that there are unplanned events or special circumstances, such as serious illness, where paying the full amount or the minimum offer amount might impair your ability to provide for yourself and your family. If this is the case and you can provide documentation to prove your situation, then your offer may be accepted despite your financial profile. Describe your situation below and attach appropriate documents to this offer application.

_____
_____
_____
_____
_____
_____

| Section 4 | Low Income Certification *(Individuals Only)* |
| --- | --- |

Do you qualify for Low-Income Certification? You qualify if your gross monthly household income is less than or equal to the amount shown in the chart below based on your family size and where you live. If you qualify, you are not required to submit any payments during the consideration of your offer.

☐ Check here if you qualify for Low-Income Certification based on the monthly income guidelines below.

| Size of family unit | 48 contiguous states and D.C. | Hawaii | Alaska |
| --- | --- | --- | --- |
| 1 | $2,327 | $2,879 | $2,910 |
| 2 | $3,152 | $3,627 | $3,942 |
| 3 | $3,997 | $4,575 | $4,973 |
| 4 | $4,802 | $5,523 | $6,004 |
| 5 | $5,627 | $6,471 | $7,035 |
| 6 | $6,452 | $7,419 | $8,067 |
| 7 | $7,277 | $8,367 | $9,098 |
| 8 | $8,102 | $9,315 | $10,129 |
| For each additional person, add | $825 | $948 | $1,031 |

| Section 5 | Payment Terms |
| --- | --- |

⬇   **Check one of the payment options below to indicate how long it will take you to pay your offer in full**   ⬇

**Lump Sum Cash**

Enter the amount of your offer $ THREE MILLION DOLLARS

☐ Check here if you will pay your offer in five or fewer payments:

Enclose a check for 20% of the offer amount (waived if you are an individual and met the requirements for Low-Income certification) and fill in the amount(s) and date(s) of your future payment(s). Your offer must be fully paid 24 months from the date your offer is accepted.

| Total Offer Amount | – | 20% Initial Payment | = | Remaining Balance |
| --- | --- | --- | --- | --- |
| $ | – | $ | = | $ |

You may pay the remaining balance in one payment after acceptance of the offer or up to five payments.

1) $ _____ paid on the _____ (day), _____ month(s) after acceptance.
2) $ _____ paid on the _____ (day), _____ month(s) after acceptance.
3) $ _____ paid on the _____ (day), _____ month(s) after acceptance.
4) $ _____ paid on the _____ (day), _____ month(s) after acceptance.
5) $ _____ paid on the _____ (day), _____ month(s) after acceptance.

**Periodic Payment**

Enter the amount of your offer $ _____

☐ Check here if you will pay your offer in full in more than five monthly installments.

Enclose a check for one month's installment (waived if you are an individual and met the requirements for Low-Income certification)

$ _____ is being submitted with the Form 656 and then $ _____ on the _____ (day) of each month thereafter for a total of _____ months *(may not exceed 23)*. Total payments must equal the total Offer Amount.

You must continue to make these monthly payments while the IRS is considering the offer. Failure to make regular monthly payments will cause your offer to be returned.

Robert Leslie  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
Marilyn Leslie 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

Page 3 of 4

| Section 6 | Designation of Down Payment and Deposit *(Optional)* |

If you want your payment to be applied to a specific tax year and a specific tax debt, please tell us the tax form _____ and Tax Year/Quarter _____ . If you do not designate a preference, we will apply any money you send in to the governments best interest.

If you are paying more than the required payment when you submit your offer and want any part of that payment treated as a deposit, check the box below and insert the amount.

☐ I am making a deposit of $ _____ with this offer.

| Section 7 | Source of Funds and Making Your Payment |

Tell us where you will obtain the funds to pay your offer. You may consider borrowing from friends and/or family, taking out a loan, or selling assets.

_____

_____

Include separate checks for the payment and application fee.

Make checks payable to the "United States Treasury" and attach to the front of your Form 656, Offer in Compromise. All payments must be in U.S. dollars. Do not send cash. Send a separate application fee with each offer; do not combine it with any other tax payments, as this may delay processing of your offer. Your offer will be returned to you if the application fee and the required payments are not properly remitted, or if your check is returned for insufficient funds.

| Section 8 | Offer Terms |

By submitting this offer, I/we have read, understand and agree to the following terms and conditions:

| | |
|---|---|
| **Terms, Conditions, and Legal Agreement** | a) I request that the IRS accept the offer amount listed in this offer application as payment of my outstanding tax debt (including interest, penalties, and any additional amounts required by law) as of the date listed on this form. I authorize the IRS to amend Section 2 on page 1 in the event I failed to list any of my assessed tax debt. I understand that my offer will be accepted, by law, unless IRS notifies me otherwise, in writing, within 24 months of the date my offer was received by IRS. |
| **IRS will keep my payments, fees, and some refunds.** | b) I voluntarily submit the payments made on this offer and **understand that they are not refundable even if I withdraw the offer or the IRS rejects or returns the offer.** Unless I designated how to apply the required payment (page 3 of this application), the IRS will apply my payment in the best interest of the government, choosing which tax years and tax liabilities to pay off. The IRS will also keep my application fee unless the offer is not accepted for processing. |
| | c) The IRS will keep any refund, including interest, that I might be due for tax periods extending through the calendar year in which the IRS accepts my offer. I cannot designate that the refund be applied to estimated tax payments for the following year or the accepted offer amount. If I receive a refund after I submit this offer for any tax period extending through the calendar year in which the IRS accepts my offer, I will return the refund as soon as possible. |
| | d) The IRS will keep any monies it has collected prior to this offer and any payments that I make relating to this offer that I did not designate as a deposit. Only amounts that exceed the mandatory payments can be treated as a deposit. Such a deposit will be refundable if the offer is rejected or returned by the IRS or is withdrawn. I understand that the IRS will not pay interest on any deposit. The IRS may seize ("levy") my assets up to the time that the IRS official signs and accepts my offer as pending. |
| **Pending status of an offer and right to appeal** | e) Once an authorized IRS official signs this form, my offer is considered pending as of that signature date and it remains pending until the IRS accepts, rejects, returns, or terminates my offer or I withdraw my offer. An offer is also considered pending for 30 days after any rejection of my offer by the IRS, and during the time that any rejection of my offer is being considered by the Appeals Office. An offer will be considered withdrawn when the IRS receives my written notification of withdrawal by personal delivery or certified mail or when I inform the IRS of my withdrawal by other means and the IRS acknowledges in writing my intent to withdraw the offer. |
| | f) I waive the right to an Appeals hearing if I do not request a hearing within 30 days of the date the IRS notifies me of the decision to reject the offer. |
| **I must comply with my future tax obligations and understand I remain liable for the full amount of my tax debt until all terms and conditions of this offer have been met.** | g) I will file tax returns and pay required taxes for the five year period beginning with the date of acceptance of this offer. If this is an offer being submitted for joint tax debt, and one of us does not comply with future obligations, only the non-compliant taxpayer will be in default of this agreement. |
| | h) The IRS will not remove the original amount of my tax debt from its records until I have met all the terms and conditions of this offer. Penalty and interest will continue to accrue until all payment terms of the offer have been met. If I file for bankruptcy before the terms are fully met, any claim the IRS files in the bankruptcy proceedings will be a tax claim. |
| | i) Once the IRS accepts my offer in writing, I have no right to contest, in court or otherwise, *the amount of the tax debt.* |
| **I understand what will happen if I fail to meet the terms of my offer (e.g., default).** | j) If I fail to meet any of the terms of this offer, the IRS may levy or sue me to collect any amount ranging from the unpaid balance of the offer to the original amount of the tax debt without further notice of any kind. The IRS will continue to add interest, as Section 6601 of the Internal Revenue Code requires, on the amount the IRS determines is due after default. The IRS will add interest from the date I default until I completely satisfy the amount owed. |
| **I agree to waive time limits provided by law.** | k) To have my offer considered, I agree to the extension of the time limit provided by law to assess my tax debt (statutory period of assessment). I agree that the date by which the IRS must assess my tax debt will now be the date by which my tax debt must currently be assessed plus the period of time my offer is pending plus one additional year if the IRS rejects, returns, or terminates my offer or I withdraw it. (Paragraph (e) of this section |

| Section 8 - (Continued) | Offer Terms |
|---|---|

| | defines pending and withdrawal). *I* understand that I have the right not to waive the statutory period of assessment or to limit the waiver to a certain length or certain periods or issues. I understand, however, that the IRS may not consider my offer if I refuse to waive the statutory period of assessment or if I provide only a limited waiver. I also understand that the statutory period for collecting my tax debt will be suspended during the time my offer is pending with the IRS, for 30 days after any rejection of my offer by the IRS, and during the time that any rejection of my offer is being considered by the Appeals Office. |
|---|---|
| **I understand the IRS may file a Notice of Federal Tax Lien on my property.** | l) The IRS may file a Notice of Federal Tax Lien during the offer investigation. The IRS may file a Notice of Federal Tax Lien to protect the Government's interest on offers that will be paid over time. This tax lien will be released when the payment terms of the accepted offer have been satisfied. |
| **I authorize the IRS to contact relevant third parties in order to process my offer** | m) By authorizing the IRS to contact third parties including credit bureaus, I understand that I will not be notified of which third parties the IRS contacts as part of the offer application process, as stated in section 7602(c) of the Internal Revenue Code. |
| **I am submitting an offer as an individual for a joint liability** | n) I understand if the liability sought to be compromised is the joint and individual liability of myself and my co-obligor(s) and I am submitting this offer to compromise my individual liability only, then if this offer is accepted, it does not release or discharge my co-obligor(s) from liability. The United States still reserves all rights of collection against the co-obligor(s). |

| Section 9 | Signatures |
|---|---|

Under penalties of perjury, I declare that I have examined this offer, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Taxpayer/Corporation Name | Phone Number | Date *(mm/dd/yyyy)* |
|---|---|---|
| *Marilyn B. Leslie* | 805 - 844 - 9221 | 12 - 7 - 2014 |
| Signature of Taxpayer/Authorized Corporate Officer | Phone Number | Date *(mm/dd/yyyy)* |
| *Robert G. Leslie /As Behalf Leslie* | 805 322-3652 | 12 -7 -2014 |

| Section 10 | Paid Preparer Use Only |
|---|---|

| Signature of Preparer | Phone Number | Date *(mm/dd/yyyy)* |
|---|---|---|
| | 310-883-7930 | 1-6-2014 |
| Name of Paid Preparer | Preparer's CAF no. or PTIN | |
| Mouris Behboud, Esq. | 0304-95066R | |

Firm's Name, Address, and ZIP Code
Law office of Mouris Behboud
201 Wilshire Blvd. Third Floor Santa Monica, CA 90401

*Include a valid, signed Form 2848 or 8821 with this application, if one is not on file.*

| Section 11 | Third Party Designee |
|---|---|

| Do you want to allow another person to discuss this offer with the IRS? | ☐ Yes ☐ No |
|---|---|
| *If yes, provide designee's name* | Telephone Number ( ) |

| IRS Use Only | |
|---|---|
| I accept the waiver of the statutory period of limitations on assessment for the Internal Revenue Service, as described in Section 8 (k). | |
| Signature of Authorized Internal Revenue Service Official | Title | Date *(mm/dd/yyyy)* |

### Privacy Act Statement

We ask for the information on this form to carry out the Internal revenue laws of the United States. Our authority to request this information is Section 7801 of the Internal Revenue Code.

Our purpose for requesting the information is to determine if it is in the best interests of the IRS to accept an offer. You are not required to make an offer; however, if you choose to do so, you must provide all of the taxpayer information requested. Failure to provide all of the information may prevent us from processing your request.

If you are a paid preparer and you prepared the Form 656 for the taxpayer submitting an offer, we request that you complete and sign Section 10 on Form 656, and provide identifying information. Providing this information is voluntary. This information will be used to administer and enforce the Internal revenue laws of the United States and may be used to regulate practice before the Internal Revenue Service for those persons subject to Treasury Department Circular No. 230, Regulations Governing the Practice of Attorneys, Certified Public Accountants, Enrolled Agents, Enrolled Actuaries, and Appraisers before the Internal Revenue Service. Information on this form may be disclosed to the Department of Justice for civil and criminal litigation.

We may also disclose this information to cities, states and the District of Columbia for use in administering their tax laws and to combat terrorism. Providing false or fraudulent information on this form may subject you to criminal prosecution and penalties.

# PROOF OF SERVICE

I am over the age of 18 and not a party to this lawsuit. My business address is:

On August __7__, 2015, I served the foregoing documents described as follows:

APPELLANTS OPENING BRIEF

on the interested parties in this action by personal service:

TIMOTHY J YOO, ESQ.
LEVENE, NEALE, BENDER, YOO & BRILL LLP
10250 CONSTELLATION BLVD, SUITE 1700
LOS ANGELES CALIFORNIA 90067

KEVIN R. BROERSMA
FIDELITY NATIONAL LAW GROUP
915 WILSHIRE BLVD SUITE 2100
LOS ANGELES CALIFORNIA 900017

JUDGE JOHN A. KRONSTADT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFRONIA, WESTERN DIVISION
U.S. COURTHOUSE, ROOM G-8
312 NORTH SPRING STREET
LOS ANGELES, CA 90012-4701

(XX)  By Mail:        I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully paid.

I declare under the penalty of perjury under the laws of the UNITED STATES OF AMERICA that the foregoing is true and correct.

Executed on AUGUST __7__, 2015 at VENTURA, California.

SIGNATURE