# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA



FILED
CLERK, U.S. DISTRICT COURT

SEP 2 8 2015

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

IN RE:

ROBERT GWEN and MARILYN BEVERLY LESLIE

)
)
)
)
)
) Case No.:  2:15-CV-02111-JAK
)
)
) **APPELLANTS REPLY BRIEF**
)

ROBERT GWEN LESLIE APPELLANT

)
)
)
)
)
)
)
)
)

_____

## APPELLANT'S OPENING BRIEF

ROBERT GWEN
LESLIE
744 FILLMORE STREET
SANTA PAULA, CALIFORNIA 93060

Appellants

BY FAX

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES CITED            i

I.   ARGUMENTS OF RES JUDICATA AND

    COLLATERAL ESTOPPEL            1

Issue Preclusion "Actually Litigated & Determined"     3

EXCEPTION TO 363 (M)            4

CONCLUSION            6

ROBERT GWEN LESLIE
744 FILLMORE STREET
SANTA PAULA, CALIFORNIA 93060

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT

| | |
|---|---|
| IN RE: | Case No. 2:15-CV-02111-JAK |
| ROBERT GWEN and MARILYN BEVERLY LESLIE | APPELLANTS REPLY BRIEF |

## DISCUSSION

### I.

### ARGUMENTS OF RES JUDICATA AND COLLATERAL ESTOPPEL

*A rule that a final judgment on the merits by a court having jurisdiction is conclusive between the parties to a suit as to all matters that were litigated or that could have been litigated in that suit.*

The U.S. legal system places a high value on allowing a party to litigate a civil lawsuit for money damages only once. U.S. courts employ the rule of res judicata to prevent a dissatisfied party from trying to litigate the issue a second time.

Res judicata will be applied to a pending lawsuit if the party asserting the res judicata defense can establish several facts. First, the party must show that a court having jurisdiction over the matter had entered a final judgment on the merits of the case. This means that a final decision in the first lawsuit was based **on the factual and legal disputes between the parties rather than a procedural defect,** such as the failure to serve the defendant with legal process.

Once a court makes a final decision, it enters a final judgment in the case. The judgment recites pertinent data about the case, such as the names of the parties, the fact that a jury verdict was rendered, and the disposition made. The judgment is filed with the court administrator for that judicial jurisdiction.

The party asserting res judicata, having introduced a final judgment on the merits, must then show that the decision in the first lawsuit was conclusive as to the matters in the second suit. For example, assume that the plaintiff in the first lawsuit asserted that she was injured in an auto accident.  She sues the driver of the other auto under a theory of Negligence.

A jury returns a verdict that finds that the defendant was not negligent. The injured driver then files a second lawsuit alleging additional facts that would help her prove that the other driver was negligent. A court would dismiss the second lawsuit under res judicata because the second lawsuit is based on the same Cause of Action (negligence) and the same injury claim.

The res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.  An erroneous conclusion reached by the court in the first suit does not deprive the defendants in the second action of their right to rely upon the plea of res judicata. (*Federated Dept. Stores v. Moitie*, 452 U.S. 394 (1981)

Under the companion rule of Collateral Estoppel, the plaintiff will not be allowed to file a second lawsuit for money damages using a different cause of action or claim.  Under collateral estoppel, the parties are precluded from litigating a second lawsuit using a different cause of action based on any issue of fact common to both suits that had been litigated and determined in the first suit. For example, the plaintiff who lost her auto accident case based on a theory of negligence cannot proceed with a second lawsuit based on an allegation that the driver intentionally struck her

2

auto, thus making it an intentional tort cause of action. A court would assert collateral estoppel because the plaintiff could have alleged an intentional tort cause of action in the original complaint.

The application of res judicata and collateral estoppel produces finality for the parties and promotes judicial economy. Parties know that when final judgment is entered and all appeals are exhausted, the case is over and the decision will be binding on all issues determined in the lawsuit.

*Issue Preclusion* "Actually Litigated & Determined"

To protect the integrity of the prior judgment by precluding the possibility of opposite results by two different juries on the same set of facts, the doctrine of issue preclusion allows the judgment in the prior action to operate as an estoppel as to those facts or questions actually litigated and determined in the prior action.

In order to determine what facts were actually litigated in the prior case, the following test is applied:  Where a judgment may have been based upon either or any of two or more distinct facts, a party desiring to plead the judgment as issue preclusion or a finding upon the particular fact involved in a subsequent suit must show that it went upon that fact, or else the question will be open to a new contention.

The estoppel of a judgment is only presumptively conclusive, when it appears that the judgment could not have been rendered without deciding the particular matter brought in question. Collateral estoppel applies only to issues that have actually been determined in the first action and not to those, which might have been determined but were not.

When a case may have been decided on more than one ground but it is impossible to ascertain which ground or grounds were actually decided, none of the grounds are collateral estoppel in a subsequent action.

3

1   Although the arguments presented by Wells Fargo and the Trustee on its face seem to have

2   met the res judicata and collateral estoppel thresholds on their face, under either brief and

3   response, **nothing is shown that the underlying first litigation was dismissed under factual**

4   **and legal disputes that have been litigated and adjudicated.**

5        There was a procedural defect, of not filing in time and the attorney at that time filed a

6   voluntary dismissal, which is not hearing and adjudicating the matter on its merits.  Therefore,

7   since there was no factual and legal disputes that have been litigated and adjudicated, therefore the

8   res judicata and collateral estoppel arguments in the response fail.

9

10       Secondarily, contrary to the arguments presented by the opposition, Robert Leslie did in

11  fact file notices of stays, and TRO requests; but was consistently denied by the same Court

12  Bankruptcy court.

13       Therefore the only rationale and fair option that was available to Mr. Leslie was to take the

14  matter up to the Appellate Court herein, in the United States District Court, wherein a neutral

15  arbitrator would read and review the facts, and laws, to reach a determination.

16

17       As the underlying court did not honor or hear said arguments.  Therefore the argument that

18  there can be no appeal is patently incorrect.  If such were the case, this Honorable court would not

19  have given a briefing schedule and disposed of the matter outright.  Respectfully, Mr. Leslie

20  requests that a full reading and opinion to be given on all such matters.

21  **EXCEPTION TO 363 (M)**

22       While the Bankruptcy Code provides a safe haven for good faith purchasers, it also creates

23  a mechanism to challenge sales that were <u>tainted by fraud</u>, collusive bidding or <u>other misconduct.</u>

24  Under section 363(n), a sale may be voided "if the sale price was controlled by an agreement

25  among potential bidders." Alternatively, a bankruptcy trustee or chapter 11 debtor-in-possession

26  may recover from a party to such agreement an amount equal to the difference between the true

27

28

4

1  value of an asset and the price actually paid for it. In either case, any costs, attorneys' fees or

2  expenses incurred in challenging the sale are also recoverable. In addition, the bankruptcy court

3  may levy punitive damages against anyone who enters into such an agreement in "willful

4  disregard" of the statute. This "anti-bid rigging" proceeding for relief from a final sale order is an

5  exception to *res judicata.*

6

7      Federal procedural rules also provide a mechanism for obtaining relief from otherwise

8  final orders. Rule 60(b) provides in relevant part that the court may relieve a party from the terms

9  of a final order or judgment based upon "newly discovered evidence which by due diligence could

10  not have been discovered in time to move for a new trial" and due to "fraud . . ., misrepresentation,

11  or other misconduct of an adverse party."

12      The latter is commonly referred to as the "fraud-based" exception to the rule of finality. A

13  separate exception under common law -- the "fraudulent concealment" exception -- is applied by

14  some courts where evidence was fraudulently concealed from the court and/or or the parties at the

15  time that the court issued an order.

16

17      Any action seeking relief under the fraud-based exception in Rule 60(b) must be

18  commenced within a reasonable time and not more than one year after entry of the order or

19  judgment from which relief is sought. The interaction among Rule 60(b), which expressly applies

20  to any federal court order (including bankruptcy court orders), the common law fraudulent

21  concealment exception and the policy of bankruptcy sale order finality has created a fair amount

22  of controversy in the courts.  Here the appeal was done forthwith and the opening and arguments

23  as to fraud and the interplay involving the trustee has been always brought to the Courts attention

24  contrary to the oppositions filed herein.

25

26      The Third and Second Circuits addressed the finality of sale orders and the circumstances

27  under which the can be successfully challenged in *In re Charter Behavioral Health Systems* and *In*

28

5

*re Lawrence.* Therefore even in the opening brief and prior motions filed by the debtors the issues as to the fraud and mishandling of the estate by the trustee have consistently been brought up, and was also a cornerstone of the first amended complaint.

Therefore to argue that it was never brought up and that the section (m) should conclude that the matter is moot, is patently incorrect. There is an exception under (n) fraud, and when the price of the auction is contrary to the selling price at that time and even currently, which is listed for over 9 Million, then there is a perception if not a factual misrepresentation and fraud being committed against the estate.

The property was auctioned off at a low value, and just recently by the new supposed bona fide purchaser, has been listed for sale for over $ 9 million dollars. Therefore the exception must be applied as to the fraud, and misrepresentation.

Furthermore the Leslies through their at the time counsel did in fact file an exparte motion to stay the sale and TRO attached hereto shown that it was file on November 18, 2014 (exhibit 1) the same day as the sale was to be heard. the immediate stay of proceedings and temporary restraining order In effect a stay was filed. Therefore Mr. Leslie respectfully requests that the matter fall within the exception and it not moot contrary to the allegations made in the opposition papers filed by the trustee and wells fargo bank.

## CONCLUSION

Appellant respectively ask this Reviewing Court to review the ruling of the trial court as to the motion to dismiss, and find that the bankruptcy trial courts decision was in error. The Motion to Dismiss, which the District court granted must be reversed and remanded so that all the issues will be tried on the merits. This is a case that the trier of fact must hear and decide, as there are material issues of fact that are in controversy.

Dated: September 25, 2015

Robert Gwen Leslie
Robert Gwen Leslie

ROBERT GWEN LESLIE
744 FILLMORE STREET
SANTA PAULA, CALIFORNIA 93060

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT

Case No. 2:15-CV-02111-JAK

IN RE:

ROBERT GWEN and MARILYN
BEVERLY LESLIE

CERTIFICATION AS TO WORD

COUNT

The Undersigned certifies that the motion filed has a word count of 1875 words,

using Word 2007 or greater.

Dated:  September 25, 2015

*Robert Gwen Leslie*
Robert Gwen Leslie

## PROOF OF SERVICE

I am over the age of 18 and not a party to this lawsuit. My business address is:

3373 Highway 75
Holdenville, OK. 74848

On September 28, 2015, I served the foregoing documents described as follows:

APPELLANTS REPLY – Case No.: 2:15-CV-02111-JAK

on the interested parties in this action by personal service:

TIMOTHY J YOO, ESQ.
LEVENE, NEALE, BENDER, YOO & BRILL LLP
10250 CONSTELLATION BLVD, SUITE 1700
LOS ANGELES CALIFORNIA 90067

KEVIN R. BROERSMA
FIDELITY NATIONAL LAW GROUP
915 WILSHIRE BLVD SUITE 2100
LOS ANGELES CALIFORNIA 900017

JUDGE JOHN A. KRONSTADT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFRONIA, WESTERN DIVISION
U.S. COURTHOUSE, ROOM G-8
312 NORTH SPRING STREET
LOS ANGELES, CA 90012-4701

(XX)  By Mail:     I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully paid.

I declare under the penalty of perjury under the laws of the UNITED STATES OF AMERICA that the foregoing is true and correct.

Executed on September 28, 2015 at Holdenville, Oklahoma

SIGNATURE

# EXHIBIT "1"

EXHIBIT

Patrick Swanson, Esq. (SBN 269034 )
1101 E. BROADWAY SUITE 203
Glendale Ca 91205
Telephone: (818) 484-8742
Fax: (866) 484-2292

Attorneys for Appellants

```
                FILED

              NOV 1 8 2014
```

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT – SANTA BARBARA

## NORTHERN DIVISION

| | |
|---|---|
| IN RE | Case No. 9:08-BK-11949-BR |
| ROBERT and MARILYN LESLIE | |
| Debtors | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IMMEDIATE STAY OF PROCEEDINGS AND TEMPORARY RESTRAINING ORDER |

To the Clerk of the above entitled Court:

NOTICE IS GIVEN that Debtors ROBERT and MARILYN LESLIE, hereby appeal from the Order of the Court as to confirmation of Sale entered against the property on or abtou November 4, 2014.

Dated: November 15, 2014

By:_____
Patrick Swanson, Attorney for debtors

- 1 -

Patrick Swanson, Esq. (SBN269304 )
1101 E. BROADWAY SUITE 203
Glendale Ca 91205
Telephone: (818) 484-8742
Fax: (866) 484-2292

Attorneys for Appellants

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT – SANTA BARBARA

### NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Case No. 9:08-BK-11949-BR |
| ROBERT and MARILYN LESLIE | ) | |
| | ) | |
| Debtors | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT |
| | ) | OF IMMEDIATE STAY OF |
| | ) | PROCEEDINGS AND TEMPORARY |
| | ) | RESTRAINING ORDER |
| | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
I.
INTRODUCTION

1.  On or about August 28, 2008, debtors commenced bankruptcy under

Chapter 11, of the United States Bankruptcy Code.  On or about October 27,

2009, the Court made an order to convert the case from a chapter 11 to a

chapter 7 and therein appointed the defendant and present Trustee Sandra K.

McBeath.

- 1 -

2. When a bankruptcy action is filed under Chapter 7, 12 or 13 of the U.S. Bankruptcy Code, the court will automatically assign the case to a judge and a trustee. Both the judge and trustee monitor the case from filing through discharge or dismissal. The trustee, however, will have a more active role in the administration of the case and its ultimate outcome.

3. On or About November 4, 2014, the Court held a hearing for sale of said property as shown via the attached order as exhibit "A",  The property in question is hereby therefore being requested to be held for a hearing on a Temporary Restraining Order, and the sale through escrow should not proceed.

II.

AN EMERGENCY SITUATION

"An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." C.R.C. Rule 379(g).

The applicant must make an affirmative factual showing in a declaration, based on personal knowledge, of the irreparable harm, immediate danger, or any other statutory basis for granting ex parte relief rather than setting the matter for a

- 2 -

hearing on noticed motion. Cal. Rules of Court, rule 369(e). <u>Datig v. Dove Books, Inc.</u> (1999) 73 Cal.App.4th 964, 976. This motion must be granted if there is good cause to grant the sought after order.   It is well settled law in California that a showing of "good cause" requires "[a] factual exposition of a reasonable ground for the sought after order. 'Good cause' may be equated to a good reason...." <u>Waters v. Superior Court</u> (1962) 58 Cal.2d 885.

The applicant must make an affirmative factual showing in a declaration, based on personal knowledge, of the irreparable harm, immediate danger, or any other statutory basis for granting ex parte relief rather than setting the matter for a hearing on noticed motion. Cal. Rules of Court, rule 369(e). <u>Datig v. Dove Books, Inc.</u> (1999) 73 Cal.App.4th 964, 976.

### III.

### <u>A STAY SHOULD BE GRANTED IN THIS MATTER</u>

As the Ninth Circuit has noted, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter Motion to **Stay Proceedings** Pending a **stay** of an action before it, pending resolution of independent **proceedings** which bear upon the case," including **proceedings** in an administrative forum.  Lockyer v. Mi rant Corp. ,  398 F. 3d 1098, 1111 (9 Cir. 2005), quoting Leyva v. Certified Grocers of Calif., 593 F.2d 857, 863-64 (9 Cir. th th 1997).  See also Eth icon, Inc. v. Quigg, 849 F. 2d 1422,

- 3 -

1426-27 (Fed. Cir.  1988) (Reasonable to **stay proceedings** pending a Patent and

Trademark Office reexamination of a patent.

     Here the debtors have received the Courts order as to the sale being

approved, on their property located at 3739 Wheeler Canyon Road, Santa Paula,

California 93060. Further debtors have filed an appeal of this ruling, which is the

subject matter of the property, which is pending appeal by appellants.  The request

herein is to stay the proceedings so that the owners of said property have their

proper day in court, and the TRO is heard on its merits, and while this Court may

consider its decision.    The Court should stay the proceedings to wit the sale and

escrow that Is currently pending.

     A litigation stay in this case is not only compelled by the facts, but is

expressly authorized pursuant to Code of Civil Procedure sections 410.30(a)

(authorizing a stay whenever justice requires) and 418.10(a)(2) (authorizing

litigation stays that promote convenience), as well as California Rule of Court 804

(permitting formal or informal coordination of related cases).

     *In Schneider v. Vennard*, 183 Cal.App. 3d 1340, 1348 (1986) the court stated

that the risk of "unseemly conflicts" between the state and federal courts, including

inconsistent factual findings, discovery rulings, and motion or trial results, *Caiafa*

*Prof'l Law Corp. v. State Farm Fire & Cas. Co.*, 15 Cal. App. 4th at 806.

- 4 -

Particularly is this so where the **discretion is exercised in favor of the granting of the relief sought,** as such action tends to bring about a conclusion on the merits, which is always to be desired.'" ( *Crane* v. *Kampe,* 225 Cal.App.2d 200, 204 [37 Cal.Rptr. 220]; *Vinson* v. *Los Angeles Pac. R. R. Co.,* 147 Cal. 479, 483 [82 P. 53].)

IV.

**A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED IN ORDER TO PRESERVE THE STATUS QUO UNTIL A FINAL DETERMINATION OF THE MERITS OF THIS ACTION**

A preliminary injunction may be granted to preserve the status quo until a final determination of the merits of action.  Continental Baking Co. v. Katz (1968) 68 Cal. 2d 512, People v. Black's Food Store (1940) 16 Cal. 2d 59.  The status quo should be preserved until this action could be determined on the merits by the appellate court.

Appellants have invested a considerable amount of money to purchase this property without knowing the full-misrepresented facts and circumstances.

Unless and until enjoined and restrained by this court, respondents conduct will cause great and irreparable injury to appellants in this appeal, in that the property the subject matter of this appeal, will be auctioned off and sold with the property being lost forever.

- 5 -

Appellants have no adequate remedy at law for the injuries, which will result from Sale of this property on November 4, 2014. It would further be impossible for appellants to determine the precise amount of damage that they will suffer if respondent's conduct is not restrained. Appellants seek a temporary restraining order and preliminary injunction enjoining the Respondents and its agents, assigns, and successors and trustees, from going forward with the trustees sale to sale the property at a public auction until this case is decided on the merits as to the assessments and interest.

In the least the temporary restraining should be granted until the court decides whether a preliminary injunction is appropriate or not. In <u>Arnolds Management Corp. v. Eischen</u> (1984) 158 Cal.App.3d 575, 577 [205 Cal.Rptr. 15], we held that "before a junior lienor may set aside a nonjudicial foreclosure of real property under a deed of trust because of irregularities in the sale, the junior lienor must first tender the full amount owing on the senior obligation." In *Arnolds*, plaintiffs filed an action to set aside a foreclosure sale and for damages for wrongful foreclosure based upon an alleged defect in the notice concerning the date of sale which prevented their attendance or participation. They also demanded damages for fraud and negligence premised upon the trustee's misrepresentations of the actual date of sale.

- 6 -

(See Civ. Code, §§ 2904, 2876, 2924c, subd. (a)(1).) We held in that context that "a junior lienor must allege tender of the senior obligation as an essential element of any causes of action based upon irregularities in the sale procedure.  To hold otherwise would permit plaintiffs to state a cause of action without the necessary element of damage to themselves." ( Arnolds Management Corp. v. Eischen, supra, 158 Cal.App.3d at p. 580.)

The grant or refusal of a preliminary injunction is within the discretion of the trial court and its order may be reversed on appeal only if abuse of discretion is shown. ( Gosney v. State of California (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) Baypoint Mortgage Corp. v. Crest Premium Real Estate etc...., 168 Cal. App. 3d 818

Equity will not allow the drastic sanction of eviction to be used to enforce compliance without proper authority as alleged by the appellants in their application that was made and filed the subject of this appeal.    The grant of a preliminary prohibitive injunction does not determine any of the merits of a controversy, nor does it require a finding that the party seeking the injunction will necessarily prevail on the merits.

Instead, the courts apply a two part test: whether the plaintiff (appellants here) are likely to suffer greater injury from the denial of the injunction than the defendants are likely to suffer from its grant, and whether there is a reasonable

probability that the plaintiff (appellants) will prevail on the merits.    The court

balances the respective equities of the parties to determine whether the defendant

should or should not be restrained from exercising the right claimed by him.

Given the drastic implications of a being kicked out and forced out of the

subject proeprty, it is not surprising to find courts quite frequently granting

preliminary injunctions to forestall this remedy while the court considers a case

testing whether it is justified under the facts and law. (See, e.g., Stockton v.

Newman (1957) 148 Cal.App.2d 558 [307 P.2d 56]; Bisno v. Sax (1959) 175

Cal.App.2d 714 [346 P.2d 814].)

In another line of cases, the California courts have disapproved the use of

excessive financial penalties to coerce timely payment of loan installments. (See,

e.g., Garrett v. Coast & Southern Fed. Sav. & Loan Assn. (1973) 9 Cal.3d 731 [108

Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]; Bondanza v. Peninsula Hospital &

Medical Center (1979) 23 Cal.3d 260 [152 Cal.Rptr. 446, 590 P.2d 22].)

They have ruled late payment fees cannot be set at a high level for this

purpose. Such provisions have been held invalid by the California Supreme Court

because they constitute "a penalty, i.e., an attempt to *coerce timely payment by*

*forfeiture* not reasonably calculated to merely compensate the lender, but to

penalize the borrower." ( *Bondanza* v. *Peninsula Hospital & Medical Center,*

*supra,* 23 Cal.3d 260, 266, italics added.)

Indeed the courts have limited these fees to an amount necessary to compensate for the actual damages occasioned by the delay and to defray the administrative costs legitimately associated with delayed payment. (<u>Garrett v. Coast & Southern Fed. Sav. & Loan Assn., supra 9 Cal.3d 731, 741.</u>)

### V.
### A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED
### TO PREVENT IRREPARABLE INJURY

A temporary restraining order may be granted when it appears that the commission or continuance of some act during the litigation would produce great or irreparable injury to a party to the action.  Code of Civil Procedure Section 526 (a)(2), <u>Volpicelli v. Jared Sydney Torrance Memorial Hospital</u> (1980) 109 Cal. App. 3d 242, <u>Smith v. Smith</u> (1942) 49 Cal. App. 2d 716.

Here see the declaration of Bakhsish Khalsa, attached hereto as exhibit "B", whose opinion on the value of the subject property is $9,046,000.00, which is more than enough alone if there was any form of an offer to be able to sell to pay the IRS and trustees fees, which is in essence, what the issue here is.  There is no current offer on the property, the property had been listed apparently by the Trustee and its agents, however, not properly and was not marketed for the business aspect along with the value of the property.  It was not marketed to be

able to gain this amount, and the property is a vast landmass consisting of approximately 766 acres of land.

See also the Broker Price Opinion as exhibit "C", from Michael O'Donnel, Troop Real Estates, stating the value of the parcel is $9,046.000.00. This amount of value is far exceeding the scope of an unlawful detainer matter, which is generally a quick mechanism to evict tenants, not the owners of the property with less than $10,000.00 or $25,000.00 in value.

As such the entirety of the sale that occurred on November 4, with that process is contested here, as there must be a stay to litigate the issue of value, along with the process and the unjust application.

## A. **THE COURT MUST TAK INTO CONSIDERATION THE VALUE OF SAID PROEPRTY AND WATER WELLS ETC.**

The law looks with disfavor upon forfeitures. Talbot v. Gadia (1954) 123 Cal. App. 2d. 712. It is particularly reluctant to enforce forfeitures where the default is minor. Equity should relieve the defendant from a mere technical default in the payment of interest on mortgage. Bisno v. Sax, 175 Cal. App. 2d 714. California Courts have disapproved the use of excessive financial penalties to coerce timely payment on loan installments. Garrett v. Coast & Southern Fed. Sav. & loan Assn. (1973) 9 Cal. 3d. 731; Bondanza v. Peninsula Hospital & Medical Center (1979) 23 Cal. 3d 260.

Moreover, once the property here is actually sold, then the debtors would have no way of getting back this property which is unique and property that have had for a long time and would like to keep.  Debtors are to suffer greater injury from the denial of the injunction than the United States Trustee, is likely to suffer from its granting of the injunction.

On the other hand, debtors will be terrible prejudiced, as their interest in the property will be lost.

An action for declaratory relief and an injunction is also appropriate to resolve the dispute as to the amount of the default.  Here there is such a dispute as to the amount of alleged default.  More v. Calkins (1890) 85 Cal. 188, 188-190, 24 P. 729.

**B. <u>THE LIKELIHOOD OF SUCCESS FOR THE APPELLANTS</u>**

Here the debtors are entitled to declaratory relief and this court should preserve status quo in that there should not be the sale as ordered to move forward. Here there is a probability that debtors will prevail on the merits in preventing trustee and auctioneer from taking said property to satisfy itself and the creditors, which at this point have been in contact with the defendants for offers and compromise as a means for resolution.  That must however take time to develop and get bankruptcy court approval.

## C.   THE BALANCE OF HARDSHIPS FAVOR DEBTORS

The OTHERS INVOLVED HEREIN would not be prejudiced if the temporarily stay is ordered as to the sale being halted, as the would still have their interest in the property.  The property in question, which is valued at over $9,000,000.00.  This is not a simple and standard, as the amount is well over the jurisdiction of $10,000.00 or $25,000.00 and involves the United States Trustee and the Bankruptcy Court.

"The balance of equity will not allow the drastic sanction of foreclosure to be used to enforce compliance with payment on the due date" .  Baypoint Mortgage Corporation, v. Crest Premium Real Estate Investments Retirement Trust, 168 Cal. App. 3d. 818.

On the other hand, debtors would be harmed greatly as the property which is a unique asset would be lost forever, along with their home, and personal belongings, **and water rights which have not been auctioned off,** and belonging of others that have been on the property.

The trustee must postpone the sale on order of any court of competent jurisdiction, by operation of law.  California Livestock production Credit Assn. v Sutfin (1985) 165 Cal. App. 3d 136.

- 12 -

## VI.    TEMPORARY INJUNCTIONS

### A. Standard of Review

In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction. ( King v. Meese (1987) 43 Cal.3d 1217, 1226, 240 Cal.Rptr. 829, 743 P.2d 889.) "The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo." ( Abrams v. St. John's Hospital & Health Center (1994) 25 Cal.App.4th 628, 636, 30 Cal.Rptr.2d 603.)

The determination whether to grant a preliminary injunction generally rests in the sound discretion of the trial court. ( Abrams v. St. John's Hospital & Health Center, supra, 25 Cal.App.4th at p. 636, 30 Cal.Rptr.2d 603.) "Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence. [Citation.]" ( Jessen v. Keystone Savings & Loan Assn. (1983) 142 Cal.App.3d 454, 458, 191 Cal.Rptr. 104.)

**B.   Would stopping the move out order pending appeal cause irreparable injury?**

Yes.  The preliminary injunction would preserve their rights in Status quo until rendered ruling by the appellate court, or a trial on the merits in a general jurisdiction court.  See as exhibit "D" the motion exparte filed by herein Robert Gwen Leslie outlining his reasoning of the injustice.

As our Supreme Court stated in <u>King v. Meese, supra, 43 Cal.3d at page 1227, 240 Cal.Rptr. 829, 743 P.2d 889</u>: "[T]he more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue.

This is especially true when the requested injunction maintains, rather than alters, the status quo. [Citation.]" Thus, "if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction *notwithstanding that party's inability to show that the balance of harms tips in his favor.* [Citation.]" ( <u>Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 447, 261 Cal.Rptr. 574, 777 P.2d 610,</u> preliminary injunction would preserve the status quo, which " 'has been defined to mean "the last actual peaceable, uncontested status which preceded the pending controversy." ' [Citation.]" ( <u>Voorhies v. Greene (1983) 139 Cal.App.3d 989, 995, 189 Cal.Rptr. 132,</u> quoting <u>United Railroads v. Superior Court (1916) 172 Cal. 80,</u>

87, 155 P. 463.) This supports granting the preliminary injunction. ( King v.

Meese, supra, 43 Cal.3d at p. 1227, 240 Cal.Rptr. 829, 743 P.2d 889.)

Furthermore, Willis's uncontradicted evidence that HP Moorpark was

carrying away items of realty from the complex is sufficient to establish some

irreparable injury, even in the absence of proof of their pecuniary value. ( Eames v.

Philpot (1925) 72 Cal.App. 151, 157, 236 P. 373; Conde v. Sweeney (1911) 16

Cal.App. 157, 162-163; , 116 P. 319 6 Witkin, Cal. Procedure (4th ed. 1997)

Provisional Remedies, § 303, p. 241.)

In determining whether an injunction restraining defamation may be issued,

it is crucial to distinguish requests for preventive relief prior to trial and post-trial

remedies to prevent repetition of statements judicially determined to be

defamatory. Balboa Island Village Inn, Inc. v. Lemen, 57 Cal. Rptr. 3d 320, 156

P.3d 339 (Cal. 2007), as modified, (Apr. 26, 2007).

The determination whether to issue a preliminary injunction requires the trial

court to exercise its discretion by considering and weighing two interrelated

factors, specifically, the likelihood that plaintiffs will prevail on the merits at trial,

and the comparative harm to be suffered by plaintiffs if the injunction does not

issue against the harm to be suffered by defendants if it does. Right Site Coalition

v. Los Angeles Unified School Dist., 72 Cal. Rptr. 3d 678 (Cal. App. 2d Dist.

2008).

To justify granting preliminary injunction, the more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that plaintiffs allege will occur if the injunction does not issue, especially when the requested injunction maintains, rather than alters, the status quo. Right Site Coalition v. Los Angeles Unified School Dist., 72 Cal. Rptr. 3d 678 (Cal. App. 2d Dist. 2008).

If a party seeking a preliminary injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor. Right Site Coalition v. Los Angeles Unified School Dist., 72 Cal. Rptr. 3d 678 (Cal. App. 2d Dist. 2008).

The ultimate questions on a motion for a preliminary injunction are (1) whether the plaintiff is likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant, and (2) whether there is a reasonable probability that the plaintiffs will prevail on the merits. Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 58 Cal. Rptr. 3d 527 (6th Dist. 2007).

In deciding whether to issue a preliminary injunction, a court must weigh two interrelated factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. O'Connell v. Superior Court, 47 Cal. Rptr. 3d 147 (Cal. App. 1st Dist. 2006).

**C.      Do Defendants have any plain, speedy or adequate remedy at law?**

No. There are various possibilities, which might happen in the court action

as to the valuation of the property and the wrongs committed against defendants by

various entities and the United States Trustee.


## CONCLUSION

For the foregoing reasons, appellant's application based upon the facts,

circumstances, and cases cited, along with the declaration and the evidence of the

issues, the request for stay must be granted.

Dated: November 15, 14                          By: _____
                                                Patrick Swanson, Attorney for debtors

- 17 -

# Exhibit A

1  TIMOTHY J. YOO (State Bar No. 155531)
   LINDSEY L. SMITH (State Bar No. 265401)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
5  Email: tjy@lnbyb.com, ctp@lnbyb.com, lls@lnbyb.com

6  Attorneys for Sandra K. McBeth,
7  Chapter 7 Trustee

**FILED & ENTERED**

**NOV 06 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST      DEPUTY CLERK

8              UNITED STATES BANKRUPTCY COURT
9              CENTRAL DISTRICT OF CALIFORNIA
                      NORTHERN DIVISION

10  In re                                   )  Case No. 9:08-bk-11949-PC
11                                          )
    ROBERT GWEN LESLIE and MARILYN          )  Chapter 7
12  BEVERLY LESLIE,                         )
                                            )  **ORDER AUTHORIZING TRUSTEE**
13                                          )  **TO CONTINUE OPERATING**
                                            )  **BUSINESS OF DEBTORS FOR**
14                Debtors.                  )  **LIMITED PERIOD**
15                                          )
16                                          )
17                                          )  [No Hearing Required]
18                                          )
19                                          )
20                                          )
21                                          )
22                                          )
23                                          )
24
25
26
27
28

Case 2:15-cv-02111-JAK   Document 29   Filed 09/28/15   Page 32 of 50   Page ID #:1517

Case 9:08-bk-11949-PC    Doc 434    Filed 11/18/14    Entered 11/18/14 12:02:46    Desc
Case 9:08-bk-11949-PC    Doc 432    Filed 11/08/14    Entered 11/08/14 21:47:18    Desc
Main Document    Page 21 of 69
Imaged Certificate of Notice    Page 3 of 3

1    The Court, having considered that certain *"Motion For Authority To Continue Operating*

2    *Business Of Debtors For Limited Period"* (the "Motion") filed by Sandra K. McBeth, the Chapter

3    7 trustee (the "Trustee") for the estate of Robert Gwen Leslie and Marilyn Beverly Leslie (the

4    "Debtors"), having received no opposition to the Motion, finding that proper notice of the Motion

5    has been provided, finding that it appears in the best interest of the estate to authorize the Trustee

6    to operate the business of the Debtors for a limited period, and good cause appearing, it is

7    ORDERED that:

8        1.    The Motion is granted.

9        2.    Pursuant to 11 U.S.C. § 721, the Trustee is hereby authorized to operate the real

10   property located at 3739 Wheeler Canyon, Santa Paula, California (the "Property") until March

11   31, 2015.

12       3.    The Trustee is hereby authorized to incur expenses in the ordinary course of

13   operation of the Property and make disbursements on such expenses from the funds of the estate.

14                                             ###

15

16

17

18

19

20

21

22

23

24   Date: November 6, 2014

                                        Peter H. Carroll
                                        United States Bankruptcy Judge

25

26

27

28

                                            2

# Exhibit B

Paul Cliff [151059]
Britney Torres [287019]
LOBB & CLIFF, LLP
1650 Spruce Street, Suite 410
Riverside, California 92507
(951) 788-9410 – Telephone
(951) 788-0766 – Fax

Attorneys for Party-in-Interest Bobette Leslie

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In Re:

Robert Gwen Leslie and Marilyn
Beverly Leslie,

            Debtors

) Chapter 7
) Case No.: 9:08-bk-11949-RR
) **DECLARATION OF BAKHSISH**
) **KHALSA IN SUPPORT OF**
) **MOTION FOR CONVERSION OF**
) **CASE FROM ONE UNDER**
) **CHAPTER 7 TO ONE UNDER**
) **CHAPTER 11 PURSUANT TO**
) **SECTION 706(B) OF THE**
) **BANKRUPTCY CODE**
)

I, Bakhsish Khalsa, declare as follows:

1.      I am an individual residing in the State of California. I have personal knowledge of all facts set forth herein, and if called as a witness, I could and would competently testify to all facts set forth herein.

2.      I am a Broker licensed by the Department of Real Estate. My license number is 01340077.

3.      I am currently working as a real estate broker. I am familiar with the real estate market in which property located at 3739 Wheeler Canyon Road, Santa Paul, California (the "Ranch") is located, and have studied and observed that market over the past 10 years.

4.      I have reviewed and considered the Broker's Price Opinion (the "Opinion") that is attached to this declaration as Exhibit "A." I am informed and

1  on that basis believe it to have been prepared in May of 2012 by Michael
2  O'Donnell, a salesperson registered with the Department of Real Estate, license
3  number 01722675.

4       5.    In evaluating the Opinion, I examined Parcel numbers 038-0-080-015,
5  038-0-080-025 (the "Property) in person, which consist of 766 acres of land that is
6  a part of the Ranch, and compared them to other properties that had recently been
7  sold, and to other properties currently on the market. I evaluated the valuation of
8  $9,046,000 as stated in the Opinion by employing the comparable sales method.

9       6.    Upon by review of the Ranch, I determined its value to be
10 $9,046,000.00 as stated in the Broker's Price Opinion. In arriving at my valuation,
11 I presumed the Property would have access to water when sold, but did not
12 presume it would own the wells or water rights from which the water was derived,
13 or otherwise profit from the wells and water on or below the Property.

14      7.    Since preparing the Opinion, another comparable property was listed
15 for sale. It is located on Topa Vista Lane in Ventura County, and consists of 160
16 acres of vacant (and undeveloped) land with similar topography to the Property. It
17 is currently listed for $2,650,000, which is $16,562.50 per acre.

18      8.    For the reasons stated in the Opinion, and for the reasons stated in this
19 declaration, my opinion of the fair market value of the Property as of the date of
20 this declaration is $9,046,000.00.

21      I declare under penalty of perjury that the foregoing is true and correct.
22 Executed this 28 day of January, 2013, at Newhall, California.

23
24                     Bakhsish Khalsa, Declarant
25
26
27
28

2
DECLARATION OF BAKHSISH KHALSA

252892

1   on that basis believe it to have been prepared in May of 2012 by Michael

2   O'Donnell, a salesperson registered with the Department of Real Estate, license

3   number 01722675.

4        5.     In evaluating the Opinion, I examined Parcel numbers 038-0-080-015,

5   038-0-080-025 (the "Property) in person, which consist of 766 acres of land that is

6   a part of the Ranch, and compared them to other properties that had recently been

7   sold, and to other properties currently on the market. I evaluated the valuation of

8   $9,046,000 as stated in the Opinion by employing the comparable sales method.

9        6.     Upon by review of the Ranch, I determined its value to be

10  $9,046,000.00 as stated in the Broker's Price Opinion. In arriving at my valuation,

11  I presumed the Property would have access to water when sold, but did not

12  presume it would own the wells or water rights from which the water was derived,

13  or otherwise profit from the wells and water on or below the Property.

14       7.     Since preparing the Opinion, another comparable property was listed

15  for sale. It is located on Topa Vista Lane in Ventura County, and consists of 160

16  acres of vacant (and undeveloped) land with similar topography to the Property. It

17  is currently listed for $2,650,000, which is $16,562.50 per acre.

18       8.     For the reasons stated in the Opinion, and for the reasons stated in this

19  declaration, my opinion of the fair market value of the Property as of the date of

20  this declaration is $9,046,000.00.

21       I declare under penalty of perjury that the foregoing is true and correct.

22  Executed this 28 day of January, 2013, at Newhall, California.

23

24                           Bakhsish Khalsa, Declarant

25

26

27

28

2
DECLARATION OF BAKHSISH KHALSA

252892

REPORT BY REALTOR BOB KHALSA

RE: HAMPTON CANYON RANCH

May 31, 2012

The purpose of this report is to give attention to the several revenue producing farm and ranch operations that add significantly to the value of Hampton Canyon Ranch, (HCR). These programs have played major roles in the day to day operation of the ranch. They are implemented and carried out by personnel who live on the ranch and are members of the Leslie family or have been closely associated with the family and work in ranch operations. The property and the ranch operations were inspected on May 20, 2012 and figures for the various revenue streams were obtained from the Leslie family.

I will list the programs in no particular order:

The first program is the cattle operation. Currently there are approximately 100 head of cows, three bulls, and 75 young steers and heifers. The steers and heifers are fed, fattened, castrated, and branded each year and a certain percentage of them are sold during the year. This program is monitored carefully by ranch personnel and nets approximately $60,000 a year. The success of this program is dependent upon abundant grazing land that is part of the ranch property and includes over a thousand acres on both sides of Wheeler Canyon Road.

The second program that is in the process of advanced development is the equestrian boarding operation.  Currently there are 50 horses in the

boarding operation and boarders pay $300 per month for boarding and feed. This program is being expanded in order to board 100 additional horses for a total of 150. It is expected that this program will net approximately $18,000 per month as it has earned that level of revenue in the past. The boarding operation is being run by Bobette Leslie with assistance from several people who currently reside at HCR.

The Pink Spurs rodeo training for girls is the third operation at HCR. Bobette Leslie, who runs the program, has up to 20 young female students who she trains in riding and rodeo competition. The students attend and compete, often for prize money, in several local and regional rodeo events every years. The tuition for this training program is $40.00 per week. This program annually grosses over $38,000, 90% of which is profit.   Bobette and members of her family run this program with assistance from other workers on the ranch and some of the students themselves.

The hay production operation is the fourth at HCR and it is also in stages of advance development and growth. Currently there are approximately 20 acres of "grain hay" planted and being harvested and baled at HCR. The goal for this current planting, on both sides of Wheeler Canyon Road, will be for a yield of 3000 bales. These bales will not be sold on the open market for an average price of about $17.00 per bale. Rather, they will be used to feed the horses in the different programs at HCR, thereby saving the ranch over $52,000 which would otherwise be spent for hay.   Future revenue from hay is projected to grow by as much as 100% because HCR will plant barley hay, which is a winter crop, and then "Sudan" grass

on the same field after the barley is harvested. This two harvest program from the same land will allow HCR to not only produce all the hay they need for continued operations but also allow them to sell hay on the open market, which will create a profit.

The horse training program is the 5th revenue producing program at HCR. This is run by a worker on the ranch that specializes in training and "breaking" horses. This operation nets $2600 per month for the ranch.

The sixth revenue producing program on the ranch is the "Sorrel Barn Boutique". Bobette Leslie and others run this program as a gift shop and coffee bar that is filled with western and equestrian memorabilia as well as furniture, saddles and tack, and other items popular with those who enjoy western culture. This boutique was in operation from 2009 to 2011 and is currently being developed to start up its operation again.

A seventh program that is currently under development will bring in special groups, including special needs organizations, youth groups, church groups, service organizations, and others for horse back riding, trail rides, bar- b-ques, and other special events. Due diligence and research is now underway to determine the feasibility, size, and scope of this program. It is possible that a section of the ranch will apply for 501c3 status to allow the ranch to provide these programs on a non profit basis.

Each of these programs is developed, maintained, and operated by people who live on the ranch and also are associated with the current ranch operation. Over the past years hundreds of people have benefited as customers, students, end users, and recipients of the programs run by

HCR.   Thousands of dollars of current revenue is produced by these programs and this revenue will substantially increase as these programs are further developed. An eviction of the current ranch inhabitants would also effectively end the ability to control, develop, operate and maintain these programs, some of which require intimate knowledge of the land and peculiarities of the terrain which would be difficult for a new owner to adapt to in a short span of time causing a steep drop in revenue.   In addition, there are four generations of one family, the Leslies, who reside on the ranch. They work together diligently to make the ranch not only a profitable venture, but also an operation with "long arms" that reach into many other markets and regions  with unique programs that touch the hearts of thousands of people each and every year.

To put it objectively, the first five revenue streams net the ranch a total of $424,600 each year. Applying a conservative capitalization rate of 7%, the value of only the business operations is $6,065,700. These programs at HCR very definitely add significantly add to the value of the ranch property. Ending these programs by forcing the family, associates, and workers on the ranch off the property would substantially reduce the value of Hampton Canyon Ranch.

Signed,

Bob Khalsa,  CCIM, MBA
President and Broker,
United America Realty
DRE# 01340077
Phone: 661/513-4433

# Exhibit C

## VALUATION

I place the value of the 60 acres of dry farmed hay at $12,500 per acre. The value of the plantable 70 acres is $15,000 per acre. The remaining 636 acres are valued at $11,000 per acre. This price takes into account the fact that 4 home sites could be developed on this land and there is the optimum sustained potential for water flow from 3 wells in excess of 900 gpm. Accordingly, **the total value for the 2 parcels on the east side of Hampton Canyon Ranch is $9,046,000 or $11,809 per acre.**

**Submitted By:**

**Michael O'Donnell, Realtor**
**Troop Real Estate**
**DRE# 01722675**
**Phone 818/926-2987**

I write this as a Broker Price Opinion (BPO) from a professionally licensed California Realtor. I have spent 13 years coming to this region and studying the real estate market. I believe that I have a fairly accurate understanding of the land values in this Santa Paula region. The purpose of this BPO is to develop a value of certain agricultural and ranch property in Wheeler Canyon, an unincorporated area of Ventura County. Wheeler Canyon Road is accessed by Foothill Road. The entrance to the subject property is approximately one mile up Wheeler Canyon Road north of Foothill Road.

## SUBJECT PROPERTY

The subject property is known as Hampton Canyon Ranch, (the ranch).  The address at the front entrance to the ranch is 3739 Wheeler Canyon Road, Santa Paula, California 933060.  It is owned by Robert G. Leslie and his wife, Marilyn B. Leslie. The property generally consists of 5 parcels. Their corresponding parcel numbers are 038-0-080-01, 038-0-080-02, 064-0-070-02, 062-0-070-05, and 062-0-070-08.

### EAST SIDE PARCELS
The first two parcels, ending in 01 and 02, are located on the east side of Wheeler Canyon Road. They comprise a total of 766 acres. There are no structures on this property. Roughly 600 acres are currently used for grazing. 450 of those acres could be described as gentle slopes and flat land suitable for additional hay production, home

sites, or other support structures for a farm, equestrian, or cattle operation.

## CITRUS AND AVOCADO POTENTIAL

Approximately 80 acres of both parcels are directly north of and contiguous to a large lemon and avocado orchard owned and operated by The Limonera Company. The soil comprising this 80 acre section was recently professionally analyzed by Fruit Growers Laboratory, Inc, and found to be well suited to growing citrus, including oranges, lemons, and tangerines, as well as avocados. Accordingly, this property can be planted in the foreseeable future with trees that, after a two year initial growth period, could yield year after year sizeable net income.

## DRY FARM HAY PRODUCTION

Approximately 60 acres of the parcel ending in 01 are currently used for hay production. This hay is grown using "dry farming" methods where seasonal rains irrigate the crops. The resulting harvest is a very high quality hay known as "Grain Hay". This hay is grown, cut, and baled in these fields and results in the production, from the east side of the ranch,  of approximately 43 bales per acre, or 3000 total bales. These bales are used by the ranch to feed their 150 horses. The ability to grow and use their own hay, which sells on the retail market at about $20.00 per bale, saves the ranch over $60,000. per year.

## WATER WELLS

There are 3 well sites located within these 2 parcels. According to a past report these three wells are outside of the Santa Paula Basin Pumpers boundary. One of the wells (Well # 02S) has been tested for gross water flow, one is under construction and getting ready to test, and the third is being held for future production. Well #02S was subjected to well testing when it was originally drilled in 2007. In their original report of the water volume production for this well Ayers Consulting Solutions, who also served as the hydrologist on the 2007 drilling project, reported that the Maximum Sustained Yield for the well was 457.4 gpm, and that the Optimum Sustained Yield would be 306.5 gpm.

The well that is currently being drilled is expected to yield a volume of water that will exceed the current flow from Well #02S. The exact flow volume of this well will be added to this report when that volume is known. The combined flow of water from the two wells can be used for many purposes, including irrigation for a new citrus and avocado grove on the 80 acres that are contiguous to the citrus and avocado grove owned by Limonera. . This new grove can also be irrigated by water dedicated to the ranch that comes from Well #A025, located at Cummings Road and Santa Paula Street.

One possible scenario for the ranch to utilize its water from the Cummings well in addition to the 3 wells described above is to form a new mutual water agency consisting of the well that is currently drilled, the second that is being drilled, and the third that can be drilled in the near future, and provide water to residents of Wheeler and Love Oak Canyons. Many of these residents do not receive enough water from their current allotments or wells and would gladly pay for new water that could be allotted to them from the new wells. The potential revenue generated by this water well and delivered to new end users is not known at this time.

## COMPARABLES

There are no direct comparisons either in acreage or features of properties that have been sold in the past 3 years since market prices were dramatically reduced. One sale that took place in June, 2011, was the sale of 122888 Koenigstein Rd. in Santa Paula. The entire property was 20 acres and it was zoned OS, which is the same zoning as the ranch property. This property with similar topography as the east side, but without a well, sold for $20,314.88 per acre.

A second comparison comes from a property that is actively for sale located at 2000 Goodenough Road in Fillmore, ML# 12004146. This property comprises 12 contiguous parcels totaling 1,320. acres of topography very similar to the west side without any water wells. This property is currently for sale at $11,326. per acre.

# Exhibit D

Robert Gwen Leslie
3739 Wheeler Canyon Road
Santa Paula, California 93030
805-525-2719

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA
## FOR THE COUNTY OF VENTURA

SANDRA K. MCBETH, CHAPTER 7 TRUSTEE          )
                                             )
              Plaintiff,                      )
                                             )
       vs.                                   )
                                             )
Robert Gwen Leslie, Marilyn Beverly Leslie,  )
Bobette Padilla and Does 1 to 10, inclusive  ) Date:  December 13, 2013
                                             ) Time:  8:15 AM
              Defendants.                    ) Dept. 44
                                               Reservation No.  1903213

### Motion to Vacate Judgments and/or Motion to Stay Until Appealed

Comes now, Robert Gwen Leslie, "(Leslie") without Assistance of Counsel with this Motion to Vacate ORDERs and/or Motion to Stay Until Appealed ("**Motion**") with Memorandum and Verified affidavit.

The Court having reviews this Motion, the Facts, and Memorandum supported by the Verified Affidavit does **HEREBYBY ORDERED, ADJUDGED, and DECEED** to the following:

    1. The ORDERS and Judgments are vacated with Prejudice; or,

    2 The ORDERS and Judgments are Stayed pending the outcome from the Bankruptcy Court; or,

    3. The ORDERS and Judgments are vacated as no Leave of the Bankruptcy Court has been granted to allow this Court to proceed.

    4. The ORDERS and Judgments are Stayed for _____ days

Motion to Vacate or Stay          Page 1 of 18

to allow Leslie time to File an Appeal in the State of California; or.

4.

Dated _____, 2013          _____
                                     Signature of Judge of the Superior Court

## I. Motion

Sandra K. McBeth ("McBeth") has filed for an **Unlawful Detainer Complaint;** wherein, this Court lacks jurisdiction of the subject matter and Parties as Robert Gwen Leslie ("Leslie") and Marilyn Beverly Leslie, represented by Kevin D. Chaffin ("Chaffin") of the Chaffin Law Office, are currently in a Chapter 7 Bankruptcy Proceeding in Case 9:08-cv-11949-RR in U.S. Bankruptcy Court, Central District of California (Santa Barbara) which has jurisdiction of all proceeding concerning the "debtors-in-possession" estate except in very limited circumstances with the permission of the Bankruptcy Court.

No Notice has been given to the Bankruptcy Court of this Unlawful Detainer Complaint, McBeth is attempting conversion from "debtors-in-possession" to merely "tenants" for Leslie and his wife's property illegally, Chaffin agreed to a Stipulation as a dilatory action while a promising to pursue an Adversary Proceeding filed on March 27, 2012 in Bankruptcy Court (Docket 274), Chaffin did not follow up with the Complaint stating he was threaten and was "in over his head" with this Complaint and the Leslie not being represented by Chaffin wasn't even noticed of the last Judgment Amended on December 6th, 2013 until after the Hearing at 8:15 AM.

## II. Attachments.

This is the list of the Attachments to this Motion, to wit:

1. **Attachment 1—Judgments to be Vacated;**

2. **Attachment 2—Adversary Proceeding Filed in Bankruptcy Court—Docket 274;**

3. **Attachment 2A—Exhibits to Docket 274;**

4. **Attachment 2B—Exhibits to Docket 274;**

5. **Attachment 3—Leave to File Civil Action—Docket 287;**