1    the time this was filed, we did not have any of those

2    things.  And my approach as required by the Bankruptcy

3    Code is to gain control of the property so that I can

4    market it.

5        Q    Can I have the documents you produced earlier,

6    please?  I think I gave them back by accident.

7        A    Yeah.

8        Q    Thanks.  You were appointed Chapter 7 trustee in

9    2009?

10        A    Yes.

11        Q    So approximately two-and-a-half years ago?

12        A    Yes.

13        Q    And if I understand your earlier testimony

14    correctly, you've never been to the property?

15        A    Personally, no.

16        Q    And have you ever been personally to any of the

17    properties in the estate?

18        A    No.

19        Q    Okay.  Can you please describe your understanding

20    of the property that's at issue in this Unlawful Detainer?

21    What does it consist of that you're seeking to get control

22    over?

23        A    It's my understanding that the property consists

24    of 1,700-plus acres of rolling hills.  There are several

25    structures on the property, several residences, a horse

Page 19

```
1    barn, and a horse arena, possibly some outbuildings of
2    some sort.  I have seen aerial views.  I have now seen
3    pictures of each of the structures.  I've seen pictures of
4    the road.  There are some water wells at issue, which I
5    would defer to my general counsel to discuss any of that.
6    And there is possibly some grazing areas for livestock.
7        Q    I understand part of your response about
8    deferring and I'm going to try to do the same.  I know
9    there are other issues that are not related to this --
10       A    Yes.
11       Q    -- UD, so I'm going to do my best to stay in my
12   outline here.
13       A    Okay.
14       Q    Specifically, do you know how many houses are on
15   the property?  I'm sorry?
16       A    I don't want to guess and I -- I didn't review
17   the reports that I received from the insurance broker
18   before I came down today.  I don't want to guess.
19       Q    Okay.
20       A    I -- my recollection is four to five, but I don't
21   want to be held to that.
22       Q    You testified a minute ago about, you've now
23   reviewed pictures of the road and pictures of structures.
24   Can you identify what pictures those are in terms of
25   what's the source?
```

Page 20

1      A    The source is primarily from the insurance broker

2    that we were working with along with your client.  And my

3    broker has now gone up and taken some pictures of the

4    structures.  And I believe I reviewed both sets of

5    pictures.

6      Q    And is that of Mr. Kling?

7      A    Yes.

8      Q    Fritz Kling?

9      A    Fritz Kling.

10     Q    Okay.  So I already asked you how many houses and

11   you responded.

12          Do you know how many apartments are on the

13   property?

14     A    I don't.

15     Q    Do you know how many agricultural buildings are

16   on the property?

17     A    I do not.

18     Q    Do you know how many barns are on the property?

19     A    I have reviewed reports that stated that, but I

20   don't recall offhand.

21     Q    Do you know how many total separate structures

22   there are that people live in on the property?

23     A    I don't.

24     Q    Do you know how many people live on the property?

25     A    I don't know the total when you include the kids,

Page 21

1    the grandkids, the great-grandkids.  I do not know the

2    total number, no.

3         Q    Do you know how many animals are on the property?

4         A    I do not.

5         Q    Do you know what different types of livestock

6    there are on the property besides horses and cattle?

7         A    As far as I know, there are horses.  I don't know

8    the details on the cattle or any other animals.  Dogs.  I

9    do understand there's dogs up there.

10        Q    Do you know -- just a couple.

11             Do you know what's grown on the property?

12        A    No.

13        Q    I'd sent you written discovery and I'm trying to

14   avoid having to follow up with that at all and wanted to

15   rehash a couple of the questions on there and make sure I

16   understood what your answers are.  So these are questions

17   you've seen before, but I have not asked you before.

18   Okay?

19        A    Okay.

20        Q    Okay.  To the extent that you are seeking $300 a

21   day as fair rental value of the premises, what is that

22   based on?

23        A    That number was based upon information I obtained

24   in discussions with my real estate broker.

25        Q    Mr. Kling?

1      A    Yes.

2      Q    Okay.  Do you know if Mr. Kling was giving you an

3    opinion of the daily value of the houses or all the

4    structures?

5      A    I do not know.

6      Q    Or all the property?

7      A    I do not know.

8      Q    Okay.  Just a rough estimate.  But the number of

9    days at issue, I think, and that value is like $81,000 so

10   far, so I am hoping you can understand, I'm trying to be

11   very specific about what exactly is being sought and what

12   parts are being sought if this is a -- you're saying

13   $300 -- or $9,000 a month for the entire 1,700 acres or

14   1,800 acres or what?

15     A    Well, if we consider the operating order, if

16   anyone has been paying rent at the property, those rents

17   were supposed to have been turned over to me.  I haven't

18   seen any rents from the property since I was appointed.

19   But as far as the rent issue is concerned, I've told you

20   what I know.

21     Q    Okay.  I had asked you in the discovery questions

22   whether or not you believed this was an agricultural

23   property.  I'd like to skip time and not go through all

24   these.  But, in general, what is your understanding of

25   what the property is used for?

1        MR. WITHEM:  Objection to the extent the question

2    is overly broad that the property at 1,700 acres is used

3    for one purpose.

4        THE WITNESS:  As I understand it, my knowledge is

5    the property is used.  People live there.  So it's used as

6    a residential property.  And I also understand that your

7    client operates some sort of an equine business.  That's

8    the extent of my understanding.

9        Q    BY MR. CHAFFIN:  Okay.  As far as anyone that

10   currently lives at the property, do you have specific

11   information as to when they began living there?  Other

12   than Mr. and Mrs. Leslie and Bobette Leslie.

13       A    No.

14       MR. CHAFFIN:  Okay.  Okay.  I'm going to try to

15   keep this record clean and attach as Exhibit 2 the

16   documents that you produced in response to the Notice.

17       (Whereupon Defendants' Exhibit Number 2

18       was marked for identification by the

19       Court Reporter.)

20       THE REPORTER:  Okay.

21       MR. CHAFFIN:  So that I can move to Exhibit 3,

22   which is the First Amended Complaint in this case, the

23   Unlawful Detainer Complaint.

24       (Whereupon Defendants' Exhibit Number 3

25       was marked for identification by the

Page 24

1          Court Reporter.)

2          MR. WITHEM:  Let the record reflect that the copy

3     that was provided to Ms. McBeth is not a conformed copy.

4     I'm showing her a conformed copy of what appears to be the

5     First Amended Complaint filed March 22, 2012.

6          Counsel, do you represent it's the same document?

7          MR. CHAFFIN:  You know what I'll represent,

8     Counsel, is that I was not served with the Complaint.  I

9     called Mr. Zeff and asked him why I wasn't.  He sent me

10    another copy and that's what I got.  So this is what I got

11    the second time.  And I do have another copy that I went

12    over and got from the courthouse that's probably

13    conformed, but I believe they are the same.  I think we

14    can tell most easily if you'll look at your conformed

15    copy.

16         MR. WITHEM:  It's the same.  I'm just ranting.

17         MR. CHAFFIN:  Okay.

18         MR. WITHEM:  It's the same.  I apologize for

19    that.  I'm going to get more active in this case.

20         MR. CHAFFIN:  Okay.

21         MR. WITHEM:  And we're going to get more answers

22    to your questions when you get my discovery.

23         MR. CHAFFIN:  Okay.  Now, on the back page of

24    what I'm marking as Exhibit 3, there is a Proof of Service

25    by mail dated March 20 that states "I was served with

Page 25

1      Plaintiff's Form Interrogatories to Daphne Smith-Set One."

2              Can you tell me if that's the same Proof of

3      Service on your conformed one?

4              MR. WITHEM:  It is in my file.

5              MR. CHAFFIN:  Okay.  I thought maybe because

6      there is no Proof of Service showing that I ever got this,

7      that it might have some explanation why I didn't.  But it

8      really is -- it's irrelevant except to the extent I will

9      note for the record, the copy I got does not have any

10     prejudgment claim to right of possession or anything.

11     Otherwise, that would indicate all other residents are

12     being served other than this states the three defendants

13     and Does 1 to 10.  So I was assuming that maybe that

14     wasn't served on purpose.

15             MR. WITHEM:  I can't answer your question.  I

16     have no idea.

17             MR. CHAFFIN:  Okay.  I will also note for the

18     record, Counsel, just so you can discuss with Counsel who

19     came to the hearing of my demurrer to this Complaint, that

20     I brought that up to the court, Judge Borrell, that there

21     was no prejudgment claim to right of possession and that I

22     was asking for demurrer so I could find out who you were

23     trying to evict.  And he stated that there isn't one, but

24     it's obviously just these three.  That's an issue we can

25     work out.  But just so you know that those are the

                                                       Page 26

1    proceedings to this point.

2         MR. WITHEM:  I appreciate that.  We will deal

3    with it.

4         Q    BY MR. CHAFFIN:  Okay.  Ms. McBeth, my question

5    to you is about five pages in on Exhibit 3.  This "60-day

6    Notice to Terminate Tenancy."

7         Do you have that in front of you?

8         A    Yes.

9         Q    Okay.  This 60-day notice you will see at the

10   bottom appears to be signed by Mr. Zeff and dated

11   September 28th, 2011.

12        Do you see that?

13        A    Appears to be, yes.

14        Q    Okay.  Prior to September 28th, 2011, did you

15   ever give, send, or serve a Notice to Terminate Tenancy to

16   any of the residents at the Wheeler Canyon Ranch?

17        A    Did I personally?

18        Q    Well, we can start with certainly you personally.

19   Did you ever send it to them?

20        A    I personally did not.

21        Q    Did you have someone send it to them?

22        THE WITNESS:  Can we go off the record for a

23   minute?

24        MR. WITHEM:  Did you want to talk to me?

25        THE WITNESS:  Yes.

Page 27

DOROTHEA W. HARTLEY AND ASSOCIATES, INC.    805-643-4007

1          MR. WITHEM:  Let's step outside, then.

2          (Discussion held off the record

3          outside the conference room between

4          the witness and her counsel.)

5          (Discussion held off the record.)

6          MR. WITHEM:  Go back on.

7          THE WITNESS:  Yeah.

8          Go back on.

9     Q    BY MR. CHAFFIN:  Ms. McBeth, we took a break and

10    we had an off-the-record discussion.  I'm just trying to

11    nail down are you aware of whether or not the defendants

12    in this case were ever asked to leave the property before

13    this September 28th, 2011, 60-day notice was sent out?

14    A    I do not know.

15    Q    Okay.  And are you aware of whether or not you

16    are seeking $300 a day damages for the entire time they

17    have been there versus the time that this notice was sent

18    or what -- what period?

19         MR. WITHEM:  Objection.  The question is

20    compound.

21         THE WITNESS:  I will based upon the pleadings

22    filed on my behalf in the Unlawful Detainer action is what

23    the damages I'm seeking -- that's the basis for the

24    damages I'm seeking.

25    Q    BY MR. CHAFFIN:  Okay.  Have you ever asked any

Page 28

1    of the residents at the property to pay rent for the

2    property?

3        A    No.

4        Q    Okay.  And at any time after you were appointed

5    Chapter 7 trustee, did you ever discuss with any of the

6    residents the terms of their continuing to live at the

7    property?

8            MR. WITHEM:  Objection.  Assumes facts not in

9    evidence there are such terms.

10       Q    BY MR. CHAFFIN:  Let me narrow that question

11   down.  After being appointed Chapter 7 trustee, did you

12   ever have a discussion with Robert Leslie or

13   Marilyn Leslie about any terms of them continuing to live

14   on the Wheeler Canyon property?

15       A    No.

16       Q    Okay.  How about with Bobette Leslie?

17       A    No.

18       Q    Any of their family members?

19       A    No.

20       Q    Okay.  Can you identify anyone who has resided on

21   the property that you did discuss terms of residency with?

22           MR. WITHEM:  Objection.  Misstates the testimony.

23           THE WITNESS:  No.

24           MR. CHAFFIN:  Okay.

25           THE WITNESS:  Can we go off the record for just a

                                                    Page 29

1   second?  I just -- I need to get something out there.

2          MR. CHAFFIN:  Let's go off the record.

3          (Discussion held off the record.)

4          MR. CHAFFIN:  Let's go back on.

5          We had an off-the-record discussion somewhat in

6   response to the pending question.  And I believe the prior

7   question was whether or not you had asked anyone there to

8   pay rent.  And I don't --

9      Q   BY MR. CHAFFIN:  Did we get an answer to that

10  part?

11     A   You got an answer.  It was "no."

12     Q   Okay.  Since you were appointed trustee of the

13  subject property, who has paid the utility bills for

14  running the property?

15         MR. WITHEM:  Objection.  Calls for speculation.

16  Assumes also facts not in evidence that there's only one

17  utility bill, multiple bills, so the question may be

18  compound as well.

19         MR. CHAFFIN:  I -- correct.

20         THE WITNESS:  I don't know.

21     Q   BY MR. CHAFFIN:  Okay.  Since you were appointed

22  trustee, who has paid the water bills at the property?

23     A   I don't know.

24         MR. WITHEM:  Same objection.

25         THE WITNESS:  I don't know.

Page 30

1    Q   BY MR. CHAFFIN:  And you testified earlier about

2   the insurance broker and we discussed their insurance

3   since Bobette Leslie has gotten involved, that there's now

4   a broker and some insurance in place that you're aware of,

5   correct?

6    A   Yes, liability insurance.  No property insurance

7   to date.

8    Q   Okay.  Prior to -- let me ask you something.

9   Since you were appointed trustee, did you pay for any

10   property or liability insurance relating to the

11   Wheeler Canyon Ranch?

12          MR. WITHEM:  Objection.  Asked and answered.

13          THE WITNESS:  I paid a deposit to an insurance

14   broker who attempted to place insurance on the property,

15   but when his investigator went to the property, he was

16   denied access.  So we were not able to place that

17   insurance.

18    Q   BY MR. CHAFFIN:  And that's here recently in the

19   last few months?

20    A   No.  That was last year.  I sent him the deposit.

21   I believe it was last fall.

22    Q   Okay.  Are you aware of whether or not in the

23   years 2009, 2010 or 2011 whether or not any of the Leslies

24   paid for insurance on the property?

25    A   I do not know.

Page 31

DOROTHEA W. HARTLEY AND ASSOCIATES, INC.    805-643-4007

1      Q   Okay.  Since you were appointed trustee, who has

2   paid for maintenance costs at the property?

3      A   I do not know.

4      Q   Since you were appointed trustee, who has paid

5   for the wages and benefits of individuals who worked there

6   to maintain the property?

7           MR. WITHEM:  Objection.  The question is again

8   overly broad, compound, calls for speculation, lacks

9   foundation.

10          THE WITNESS:  I do not know.

11     Q   BY MR. CHAFFIN:  Earlier in your testimony you

12  referred to the operating order signed by the Court under

13  which your -- it relates to some of its' language

14  "Collection of rents," et cetera.

15          Do you remember that testimony?

16     A   Yes.

17     Q   I want to ask you a few questions about that

18  order.  If you'll give me just a second here, please.

19          MR. CHAFFIN:  I want to mark as Exhibit 4 your

20  Declaration dated November 22, 2011.

21          (Whereupon Defendants' Exhibit Number 4

22          was marked for identification by the

23          Court Reporter.)

24          MR. WITHEM:  Let me see this.

25          Counsel, hold on one second.  I just want to look

                                                    Page 32

```
 1   at that.

 2              (Discussion held off the record

 3              between the witness and her counsel.)

 4        MR. WITHEM:  I have read it.  Thank you.

 5    Q    BY MR. CHAFFIN:  I will just represent for the

 6   record this is copied from and it's Bankruptcy Court file

 7   stamped across the top, your motion for the authority to

 8   operate the business of the debtors.  That's the

 9   Declaration that was supporting that?

10    A    What's the docket number on the motion?  Is it

11   255?

12    Q    Yes.  Docket 255.

13    A    Okay.

14        MR. WITHEM:  I just represent that what you've

15   given her is her Declaration which is part of a much

16   larger document and just that the document has not been

17   provided to the witness of which this Declaration relates.

18        MR. CHAFFIN:  I'm happy for you to review it and

19   we could take a break and I'll go get one that doesn't

20   have a bunch of notes and stuff on it, but I was really

21   just trying to focus it down to the only part I care about

22   that relates to the Unlawful Detainer.

23        THE WITNESS:  I would just like to be very sure

24   that that's what this Declaration is attached to because

25   it does reference a lot of exhibits and the timing on the
```

Page 33

1    filing suggests to me it's my motion to continue authority

2    to operate, but I think it's appropriate to see the whole

3    document.

4             MR. CHAFFIN:  Let's go off for just a second.

5             (Discussion held off the record.)

6             MR. CHAFFIN:  We can go back on for a minute.

7             I'm also attaching as Exhibit 5 the Declaration

8    of Mr. Kling that you referred to earlier, which also is

9    from the same bankruptcy filing.

10            Do you want to see that, Counsel?

11            MR. WITHEM:  Sure, I would.

12            (Whereupon Defendants' Exhibit Number 5

13            was marked for identification by the

14            Court Reporter.)

15            MR. CHAFFIN:  And I will attach as Exhibit 6 and

16   we'll represent for the record this is a copy of the

17   recorded well site agreement, not the one that was

18   attached to the motion because that's not signed yet,

19   et cetera.  And that this is the one Mr. Yu sent me in an

20   e-mail after I requested it from him.

21            So that's Exhibit 6.

22            (Whereupon Defendants' Exhibit Number 6

23            was marked for identification by the

24            Court Reporter.)

25            MR. CHAFFIN:  I have about four or five more

Page 34

1   questions, I think, before I'm done here.  So if you want

2   any time to review that, we could take a break for a

3   second.  Otherwise, I can just ask the questions and if

4   you want to review it when I do, that's fine, too.

5            THE WITNESS:  I'm good.  You can go ahead and ask

6   the questions.

7       Q   BY MR. CHAFFIN:  Okay.  Earlier in your testimony

8   I asked you about the 60-day notice to terminate tenancy.

9   Do you recall that?

10      A   Yes.

11      Q   I believe it's right in front of you.

12      A   Yes.

13      Q   The September 28th, 2011.

14          Do you see that?

15      A   Yes.

16      Q   Okay.  And Exhibits 4 and 5 are part of your

17  motion for authority to operate the debtors' business,

18  correct?

19      A   Motion for authority to continue operating the

20  debtor's business.

21      Q   Correct?

22      A   Yes.

23      Q   Okay.  And also attached to that motion was a

24  Well Site, Water Rights and Easement Agreement, correct?

25      A   I believe so, yes.

                                                   Page 35

1        Q    And that agreement relates to this Wheeler Canyon

2   property that's the subject of the Unlawful Detainer?

3        A    That's my understanding.

4        Q    Okay.  And then I've given you as Exhibit 6 what

5   Mr. Yu provided me as copies of the recorded portions of

6   the basic agreement and the notorization.

7        A    Yes.

8        Q    Okay.  And your Motion for Authority to Continue

9   Operating the Business to the debtors was filed

10  November 22, 2011?

11       A    Yes.

12       Q    Okay.  So my question for you is:  The 60-day

13  notice to terminate tenancy that you had issued in this

14  case, the one we've talked about, did you have any contact

15  with ATC Realty or Wells Fargo, the people the water site

16  agreement is with, before you issued the 60-day notice?

17       A    I don't know.

18            MR. WITHEM:  Object.  Wait a minute.  Objection.

19  Misstates the facts in evidence.

20            The 60-day notice you're referring to is not

21  issued by this person, by this deponent.  It's not signed

22  by her.

23            MR. CHAFFIN:  Understood.

24       Q    BY MR. CHAFFIN:  I think you said, "I don't

25  know," but let me rephrase the question.  I'll just

                                                    Page 36

1    withdraw it.

2              I'm trying to ask you if the reason for evicting

3    the Leslies at this point has anything to do with the

4    desire to access the land to pursue the well rights, well

5    site and water rights agreement that you had signed with

6    ATC Realty/Wells Fargo.

7              MR. WITHEM:  If you can understand the question,

8    have at it.

9              THE WITNESS:  I don't.  I don't understand the

10   question.  I think I know what you're trying to get at.

11   But I don't want to presume I understand what you're

12   asking.

13       Q    BY MR. CHAFFIN:  Okay.  Well, first, to your

14   knowledge, how many of the residential structures on the

15   Wheeler Canyon property are on the side of the road where

16   the wells are?

17       A    I don't know.

18       Q    Okay.  So I'm asking:  Are you wanting to evict

19   the Leslies from access to the property where no one

20   resides?

21             MR. WITHEM:  Objection.  The question has been

22   asked and answered earlier.  She said she wants to evict

23   everybody.

24             MR. CHAFFIN:  Okay.  I may have forgotten the

25   answer.  I'm sorry.

Page 37

1      Q   BY MR. CHAFFIN:  But your present intention is to

2   evict every single person and all the animals from the

3   entire 1,800 acres irrespective of where they're located?

4      A   Yes.  To sell the property.

5      Q   Okay.  And so my question about the Exhibit 6,

6   the Well Site, Water Rights and Easement Agreement, my

7   question for you is:  Do you recall whether or not you had

8   had any discussions with the other party to that

9   agreement, ATC Realty Nine, Inc., before making the

10  decision to evict the Leslies, which is now the subject of

11  this case?

12     A   I don't specifically recall the timing on any of

13  that.  But I do know and do specifically recall that the

14  intent to evict the Leslies and my duty to take control of

15  the property began significantly before this well issue

16  ever came to light.

17     Q   Okay.  The well site agreement that was attached

18  to your motion for authority to continue operating the

19  business of the debtors, did you draft that agreement or

20  did Wells Farge provide it to you?

21     A   I did not draft it.

22     Q   Do you know who drafted it?

23     A   I do not.

24     Q   Do you know when it was drafted?

25     A   I do not.

Page 38

1        Q    Do you know when it was provided to you in terms

2    of how long before November 22nd, 2011, when the motion

3    was filed?

4        A    I couldn't specifically recall, no.

5        Q    Okay.  In terms of your testimony that you are

6    evicting all the residents and everything else there in

7    order to have access to market and sell the property, do

8    you know what the value of the property is for purposes of

9    that sale?

10       A    Not at this point.  My broker is working on that

11   at the moment.

12       Q    Mr. Kling recently came to the property, correct?

13       A    Yes.

14       Q    And prior to Mr. Kling's prior visit --

15   I'm sorry -- prior to Mr. Kling's recent visit, did you

16   ever have the property valued?

17       A    I didn't have the ability to because no one had

18   access to or could be on the property.

19       Q    Okay.  But has Mr. Kling given you even

20   preliminary values on the property?

21       A    No.

22       Q    Has Mr. Kling indicated to you an opinion as to

23   whether or not enough of the property could be sold to

24   satisfy the creditors in the bankruptcy case without

25   having to evict the Leslies?

Page 39

1        MR. WITHEM:  Objection.  The question calls for

2  speculation.  Assumes a fact not in evidence that that's

3  even possible.  It's also contrary to the current

4  bankruptcy orders.  So it does call for speculation.

5        Go ahead.

6        THE WITNESS:  We're trying to determine the value

7  of the property and the value of the various parcels and

8  they are working on it as we speak.  They have gotten the

9  information.  They are working on getting information from

10  the title company.  We now have pictures.  We now have

11  them viewing the property and that it is in process.

12     Q  BY MR. CHAFFIN:  Okay.  And if you were provided

13  with a professional real estate opinion indicating that

14  parts of the larger six parcel property could be sold for

15  enough money to satisfy the bankruptcy issues without

16  evicting the Leslies, would you stop the Unlawful Detainer

17  proceedings?

18        MR WITHEM:  Objection.  Calls for speculation.

19  Assumes facts.

20        THE WITNESS:  I don't know at this time.

21     Q  BY MR. CHAFFIN:  Okay.  Earlier I had asked you

22  about whether or not you had paid any of the water bills

23  at the property and you said you didn't know who paid them

24  from the date of appointment of trustee forward.

25        Do you remember that testimony?

Page 40

1    A    Yes.

2    Q    Do you know how much water the property has?

3    A    I don't.

4    Q    Do you know the sources of the water?

5    A    I don't.

6    Q    Okay.  Exhibit 5, I believe I gave you earlier

7    the declaration of Mr. Kling, your broker?

8    A    Yes.

9    Q    This declaration of Mr. Kling, do you see where

10   he states in Paragraph 2 -- he's referencing the well site

11   water agreement -- do you see where he states that his

12   opinion is that the water agreement is absolutely

13   necessary to preserve the value of the Wheeler property?

14   A    I see that.

15   Q    Okay.  Do you know whether or not at the time

16   this was filed with the Court you had any specific

17   information about the amount of water available at the

18   property?

19        MR. WITHEM:  Excuse me.  I'm going to get a drink

20   of water.

21        MR. CHAFFIN:  Let's take a break.

22        (Brief recess.)

23        MR. CHAFFIN:  Okay.  Go back on.

24        Could you read that back?  I don't even remember

25   what I said.

1          THE REPORTER:  Sure.

2          (Discussion held off the record.)

3          (Whereupon the record was read

4          by the Reporter as follows:

5          "Q   Do you know whether or not at the

6          time this was filed with the Court you

7          had any specific information about the

8          amount of water available at the

9          property?")

10     Q    BY MR. CHAFFIN:  Okay?

11     A    Personally, I do not recall any specific

12 information --

13     Q    Okay.

14     A    -- provided to me.

15     Q    The Exhibit 6 Well Site Agreement, can you recall

16 how the whole issue of these wells on the property, how

17 this initially came to your attention?

18     A    I believe myself or my attorneys were

19 contacted -- not these attorneys, my bankruptcy

20 attorneys -- were contacted by the entity that foreclosed

21 and took title to the property and had been possibly a

22 party to a prior water well agreement, as well as the

23 former general partner that had been a party to the water

24 well agreement.

25     Q    Okay.  So your recollection is it was initiated

Page 42

1    by the other party to the agreement?

2         A   Yes, I believe so.

3         Q   Do you recall whether or not -- I just want to

4    make sure I'm asking you about the right entities --

5    Exhibit 6, the current effective agreement is with

6    ATC Realty and Wells Fargo, correct?

7              MR. WITHEM:   Objection.   The document speaks for

8    itself.   Calls for speculation.

9              THE WITNESS:   The agreement appears to be with

10   ATC Realty Nine, Inc.

11        Q   BY MR. CHAFFIN:   And when you state with -- the

12   being approached by the prior owner or prior party to the

13   prior agreement, I just want to know:   Are you testifying

14   that you and Mr. Yu or the bankruptcy counsel, whoever it

15   was, were approached by ATC about the agreement, or were

16   approached by Wheeler Canyon partners, or Mr. Chadwick?

17   Do you recall who approached you?

18        A   I don't recall.

19        Q   Okay.   Do you recall whether or not whoever it

20   was that approached you about the well agreement, do you

21   recall whether or not they provided you with information

22   about how much water was already on the property?

23        A   I don't recall.

24        Q   Do you recall whether or not they told you that?

25   Do you recall asking --

1          MR. WITHEM:  Wait.  Objection.  The question is

2    ambiguous.

3          THE WITNESS:  I don't know why this is relevant

4    to --

5          MR. CHAFFIN:  I'm happy --

6          THE WITNESS:   -- it's an Unlawful Detainer.

7          MR. CHAFFIN:  -- I'm happy to explain it.

8          MR. WITHEM:  No, no.  My objection was what it

9    was.

10     Q   BY MR. CHAFFIN:  So my question was:  Do you

11   recall whether or not you made inquiry as to how much

12   water was already on the property before entering into

13   Exhibit 6 water rights agreement?

14         MR. WITHEM:  Objection.  Misstates the testimony.

15   Misstates the document.  Assumes facts not in evidence.

16         The question is:  Did she enter into this

17   agreement?  You just said that.

18         MR. CHAFFIN:  Yes.  She -- no, no, no, no, no.

19         MR WITHEM:  Okay.

20         MR. CHAFFIN:  My question is --

21         Can you read back my question, please?

22         MR. WITHEM:  I'm sorry.

23         THE WITNESS:  Can we go off the record?  Let's

24   go.  Let me go kinda fill you in on this.

25         MR. WITHEM:  Okay.

DOROTHEA W. HARTLEY AND ASSOCIATES, INC.      805-643-4007

1          (Discussion held off the record between

2          the witness and her counsel outside the

3          conference room.)

4          MR. CHAFFIN:  Did we get the question?

5          THE REPORTER:  Ready.

6          MR. CHAFFIN:  Is there a question or answer

7    pending?

8          THE REPORTER:  Yes.

9          (Whereupon the record was read

10         by the Reporter as follows:

11         "Q   So my question was:  Do you recall

12         whether or not you made inquiry as to how

13         much water was already on the property

14         before entering into agreement Exhibit 6

15         water rights agreement?")

16         THE WITNESS:  I entered into this agreement when

17    the bankruptcy court approved it and all of the

18    information was provided in their motion for approval of

19    entering into this agreement to the court public record

20    and was presented at the hearing.

21         Q   BY MR. CHAFFIN:  Okay.  And do you recall whether

22    or not the agreement -- strike that.  Sorry.

23         I can't recall if you answered before, but who

24    drafted the agreement?

25         A   I don't know.

1       Q    Okay.  Did you?

2       A    Personally?  No.

3       Q    Did your counsel?

4       A    I don't know.

5       Q    Okay.  At the time you approached the bankruptcy

6  court with the agreement, did you know the fair market

7  value of the Wheeler Canyon Ranch if it were to be put up

8  for sale?

9       A    I've already testified that we're trying to

10 determine the current fair market value of the property.

11          MR. WITHEM:  Well, the answer to the question is

12 no.

13          THE WITNESS:  My answer is no.

14      Q    BY MR. CHAFFIN:  Okay.  Do you know now as we sit

15 here where you're trying to get access to the property to

16 sell it, do you know whether or not Exhibit 6, the Well

17 Rights Agreement, had the effect of increasing the value

18 of the property?

19      A    I do not know.

20          MR. CHAFFIN:  I have no further questions.

21          Questions?

22          MR. WITHEM:  I have none.

23          MR. CHAFFIN:  I propose a stipulation to relieve

24 the court reporter of some of her duties under the Code;

25 that the transcript --

                                                Page 46

```
 1              THE REPORTER:  He wants it sent directly to her.

 2              MR. WITHEM:  It can go directly to my client.

 3              MR. CHAFFIN:  -- be prepared and mailed directly

 4     to Ms. McBeth; that she will have five days?  Ten days?

 5              MR. WITHEM:  Well, we're not going to go to trial

 6     on this case tomorrow, so...

 7              MR. CHAFFIN:  She'll have two weeks --

 8              THE WITNESS:  Two weeks is fine.

 9              MR. CHAFFIN:  -- from the date she receives it to

10     review the transcript, make any changes that she deems

11     necessary subject to the admonitions that we waived; and

12     sign the transcript, return the original to my office;

13     that if the transcript is not signed by the 14 days, then

14     it's understood that an unsigned copy of the transcript as

15     it was presented to her is useable for all purposes as

16     ordinarily useable; that if the original of the transcript

17     becomes lost, destroyed, or otherwise unavailable, a

18     certified copy can be used in its place for all purposes.

19              And, Counsel, how do you want to get notified of

20     the changes?

21              MR. WITHEM:  Here's what we're going to do.

22     You're going to mail the original to Ms. McBeth.  She's

23     going to make changes, corrections.  I will receive those

24     changes and corrections and we will have the original

25     returned to your offices and for some written document
```

Page 47

1   with the original to follow confirming that, one, it has

2   been signed with the signature page along with the changes

3   and corrections; should the original be lost, any

4   certified copy with those changes and corrections may be

5   used; if we are not -- strike that.

6        If we do not notify you of changes or

7   corrections, then you may use it as though the witness has

8   reviewed it and corrected it; but I will assume this

9   responsibility to advise you within the 14 days of the

10  changes, corrections, and of the signing, and I'll get the

11  original to you in due course, if required, and if I still

12  have it for some unforsaken reason, I'll make sure it's

13  lodged with the Court upon any request that you make, but

14  I will get it to you; I would like confirmation that you

15  have sent it to the deponent so that I can count those

16  14 days personally; if you could do that, Ms. Reporter.

17  Just an e-mail or fax or, you know, something.

18        Thank you.

19        And you will be custodian of the original and

20  you'll lodge it at the time of trial as necessary for any

21  other time upon reasonable request.   Correct?

22        MR. CHAFFIN:   So stipulated.

23        MR. WITHEM:   Great.

24        (Whereupon the deposition proceedings

25        concluded at 11:10 a.m.)

Page 48

1          (Whereupon it was agreed by and between

2     counsel that the court reporter would be

3     relieved of her statutory duties under

4     C.C.P. 2025.520 and 2025.550;

5          Further, that the deposition would

6     be signed by the witness under penalty

7     of perjury.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 49

1   STATE OF CALIFORNIA        )

2                             )        ss.

3   COUNTY OF SANTA MARIA      )

4

5

6         I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE

7

8   FOREGOING IS TRUE AND CORRECT.

9

10  SIGNED AT _____,

11

12  THIS _____ DAY OF _____, 2012.

13

14

15

16

17

18

19       _____

20                        SANDRA K. MCBETH

21

22

23

24

25

STATE OF CALIFORNIA )
                    )  ss.
COUNTY OF VENTURA   )

I, DOROTHEA W. HARTLEY, CSR# 5505, in and for the County of Ventura, State of California, do hereby certify:

That prior to being examined the witness whose deposition appears hereinbefore was duly sworn to testify the truth, the whole truth and nothing but the truth.

That said deposition was taken at the time and place as herein set forth; that said deposition was taken down in shorthand by me and thereafter transcribed into typewriting, and I hereby certify that the foregoing deposition is a full, true and correct transcription of my shorthand notes so taken.

I further certify that I am neither counsel for nor related to any party to said action; nor in anywise interested in the outcome thereof.

IN WITNESS WHEREOF, I have hereunto

subscribed my name this 6th day of June, 2012.

_____
DOROTHEA W. HARTLEY, CSR# 5505
in and for the County of
Ventura, State of California.

e

Page 51

## A

a.m 1:19,20 5:1
    48:25
ability 39:17
able 18:24 31:16
absolutely 18:15
    41:12
access 18:20,23
    31:16 37:4,19
    39:7,18 46:15
accident 19:6
acres 19:24 23:13
    23:14 24:2 38:3
action 9:21 12:1
    14:18 17:14 28:22
    51:13
active 25:19
administer 10:18
administering
    18:14
admonitions 6:16
    47:11
advise 48:9
aerial 20:2
ago 19:11 20:22
agree 18:12
agreed 49:1
agreement 4:10
    34:17 35:24 36:1
    36:6,16 37:5 38:6
    38:9,17,19 41:11
    41:12 42:15,22,24
    43:1,5,9,13,15,20
    44:13,17 45:14,15
    45:16,19,22,24
    46:6,17
agricultural 21:15
    23:22
ahead 13:10 14:7
    35:5 40:5
alleged 10:2
altogether 17:5
ambiguous 12:11
    13:6 14:2 44:2
Amended 3:24 10:2
    24:22 25:5
amount 41:17 42:8

analysis 13:14
animals 16:17,20
    22:3,8 38:2
answer 11:10 14:8
    17:24 18:11 26:15
    30:9,11 37:25
    45:6 46:11,13
answered 11:9 13:7
    14:4 31:12 37:22
    45:23
answers 22:16
    25:21
anywise 51:13
apartments 21:12
apologize 25:18
APPEARANCES
    2:1
appears 25:4 27:10
    27:13 43:9 51:7
appointed 19:8
    23:18 29:4,11
    30:12,21 31:9
    32:1,4
appointment 3:21
    7:6,7,11 11:12
    40:24
appreciate 27:2
approach 19:2
approached 43:12
    43:15,16,17,20
    46:5
appropriate 34:2
approval 45:18
approved 45:17
approximately
    19:11
area 9:18
areas 20:6
arena 20:1
asked 8:7 9:25 11:9
    13:7,14,4 21:10
    22:17 23:21 25:9
    28:12,25 30:7
    31:12 35:8 37:22
    40:21
asking 11:23,24
    12:22 13:13,14,19
    26:22 37:12,18

43:4,25
asks 11:21
assets 10:18 18:14
assume 48:8
Assumes 29:8
    30:16 40:2,19
    44:15
assuming 26:13
ATC 36:15 37:6
    38:9 43:6,10,15
attach 5:20 24:15
    34:15
attached 33:24
    34:18 35:23 38:17
attaching 34:7
attempted 31:14
attention 42:17
Attorney 2:7,17
attorneys 42:18,19
    42:20
authority 10:12,21
    33:7 34:1 35:17
    35:19 36:8 38:18
authorize 11:8
authorizes 11:13
authorizing 12:2
automatic 12:23
available 8:5 41:17
    42:8
avoid 22:14
aware 11:6 16:8,20
    16:23 28:11,15
    31:4,22

## B

B-e-t-h 5:18
back 7:23 13:12
    19:6 25:23 28:6,8
    30:4 34:6 41:23
    41:24 44:21
bankruptcy 7:7,14
    8:9,16,22 10:8,17
    10:17 11:7,18
    12:8,19,23 16:7
    19:2 33:6 34:9
    39:24 40:4,15
    42:19 43:14 45:17
    46:5

barn 20:1
barns 21:18
based 22:22,23
    28:21
basic 13:20 36:6
basically 8:3
basis 28:23
began 24:11 38:15
behalf 1:16 28:22
believe 6:23 8:18
    8:24 9:19 12:14
    14:15 16:12 18:17
    21:4 25:13 30:6
    31:21 35:11,25
    41:6 42:18 43:2
believed 23:22
benefit 10:19 11:5
    17:17
benefits 32:5
best 20:11
better 15:6,7
BEVERLY 1:9
bill 30:17
bills 30:13,17,22
    40:22
board 16:17 17:11
boarded 16:22 17:8
boarding 18:5
Bobette 1:9 2:24
    6:9 7:25 14:19,19
    14:25 15:18 17:7
    24:12 29:16 31:3
Bobette's 14:25
    15:19
Borrell 26:20
bottom 27:10
Boulevard 2:8
break 28:9 33:19
    35:2 41:21
Brief 7:21 41:22
bring 9:2
bringing 17:13
broad 9:13 17:22
    24:2 32:8
broker 20:17 21:1
    21:3 22:24 31:2,4
    31:14 39:10 41:7
brokers 18:23

brought 6:22 26:20
buildings 21:15
bunch 33:20
business 12:3 24:7
    33:8 35:17,20
    36:9 38:19

## C

C.C.P 49:4
California 1:1,18
    1:22 2:10,20 5:2
    50:1 51:1,4,19
call 40:4
called 25:9
calls 17:22 18:9
    30:15 32:8 40:1
    40:18 43:8
Canyon 10:15,16
    27:16 29:14 31:11
    36:1 37:15 43:16
    46:7
capital 5:18
care 33:21
carry 9:15
case 7:8,12 8:10,16
    8:17 9:1,5,19 10:8
    10:21 11:1 12:14
    12:19 13:17 14:14
    17:19 24:22 25:19
    28:12 36:14 38:11
    39:24 47:6
categories 6:24,25
    7:19 8:3
Category 8:7 9:25
cattle 16:23,24,25
    17:2,2,3 22:6,8
caveat 15:13
certain 8:25
certainly 27:18
certified 47:18 48:4
certify 51:5,10,12
cetera 8:5 32:14
    34:19
Chadwick 43:16
Chaffin 2:15,16 3:6
    5:12,19,24 6:1,11
    6:20,21 7:20,23
    7:25 8:2 9:22,25

11:10,15,17,20
12:13,16 13:10,12
13:19 14:6,8,9
15:8,10 17:24
18:2,12 24:9,14
24:21 25:7,17,20
25:23 26:5,17
27:4 28:9,25
29:10,24 30:2,4,9
30:19,21 31:1,18
32:11,19 33:5,18
34:4,6,15,25 35:7
36:23,24 37:13,24
38:1 40:12,21
41:21,23 42:10
43:11 44:5,7,10
44:18,20 45:4,6
45:21 46:14,20,23
47:3,7,9 48:22
**change** 6:6 18:6
**changed** 6:4
**changes** 47:10,20
47:23,24 48:2,4,6
48:10
**Chapter** 1:5 7:12
10:7,11,18 14:14
16:12 19:8 29:5
29:11
**children** 14:25
15:19,21
**CL-UD-VTA** 1:8
**claim** 9:17 26:10,21
**clean** 24:15
**clear** 11:22
**clerk's** 14:16
**client** 6:9 18:22
21:2 24:7 47:2
**Code** 10:17 19:3
46:24
**collecting** 12:4
**Collection** 32:14
**come** 14:15
**comes** 14:16
**coming** 6:8
**commencing** 1:19
**communication**
8:14
**communications**

8:8 9:11
**company** 40:10
**Complaint** 3:24
10:3 24:22,23
25:5,8 26:19
**compound** 28:20
30:18 32:8
**concerned** 23:19
**concluded** 48:25
**concluding** 1:19
**conclusions** 13:15
**conference** 28:3
45:3
**confirmation** 48:14
**confirming** 48:1
**conformed** 25:3,4
25:13,14 26:3
**consider** 23:15
**consist** 19:21
**consists** 19:23
**contact** 36:14
**contacted** 42:19,20
**continue** 34:1
35:19 36:8 38:18
**Continued** 4:1
**continuing** 29:6,13
**contrary** 40:3
**control** 11:3 17:15
19:3,21 38:14
**copied** 33:6
**copies** 36:5
**copy** 5:19,24 6:18
25:2,3,4,10,11,15
26:9 34:16 47:14
47:18 48:4
**correct** 10:9 30:19
31:5 35:18,21,24
39:12 43:6 48:21
50:8 51:11
**corrected** 48:8
**corrections** 47:23
47:24 48:3,4,7,10
**correctly** 19:14
**correspondence**
8:17 9:17
**costs** 32:2
**counsel** 6:2,5 9:14
12:14 13:9 20:5

25:6,8 26:18,18
28:4 32:25 33:3
34:10 43:14 45:2
46:3 47:19 49:2
51:12
**count** 48:15
**County** 1:2,17 2:18
50:3 51:2,4,19 -
**couple** 8:3,16 22:10
22:15
**course** 48:11
**court** 1:1 5:23 7:7,8
8:22 11:7,19
12:17 14:9 24:19
25:1 26:20 32:12
32:23 33:6 34:14
34:24 41:16 42:6
45:17,19 46:6,24
48:13 49:2
**courthouse** 25:12
**creditors** 10:19
11:5 17:17 39:24
**CSR** 1:21 51:4,18
**current** 17:13 40:3
43:5 46:10
**currently** 18:5
24:10
**custodian** 48:19

---

**D**

**D** 2:15,16 3:1 4:1
**daily** 23:3
**damages** 28:16,23
28:24
**Daphne** 26:1
**date** 6:4,6 31:7
40:24 47:9
**dated** 25:25 27:10
32:20
**day** 10:2 22:21
28:16 50:12 51:15
**days** 23:9 47:4,4,13
48:9,16
**deal** 27:2
**debtor's** 35:20
**debtors** 8:14,16,20
10:9 12:3 13:22
14:25 33:8 36:9

38:19
**debtors'** 35:17
**December** 7:8,9
**decision** 38:10
**declaration** 4:3,6
32:20 33:9,15,17
33:24 34:7 41:7,9
**DECLARE** 50:6
**deems** 47:10
**defendants** 1:11,16
2:13 26:12 28:11
**Defendants'** 3:18
5:21 24:17,24
32:21 34:12,22
**defer** 20:5
**deferring** 20:8
**define** 15:14
**demurrer** 26:19,22
**denied** 31:16
**deponent** 36:21
48:15
**deposed** 13:16
**deposit** 31:13,20
**deposition** 1:15
3:19 5:19 6:4,12
6:13,19,24 48:24
49:5 51:7,9,9,11
**describe** 10:24
19:19
**described** 10:24
**desire** 37:4
**destroyed** 47:17
**details** 22:8
**detainer** 3:25 10:14
11:8 12:1 14:17
17:14 19:20 24:23
28:22 33:22 36:2
40:16 44:6
**determine** 40:6
46:10
**different** 17:10
22:5
**direction** 18:25
**directly** 8:13,19
47:1,2,3
**discharge** 14:14
**discovery** 22:13
23:21 25:22

**discuss** 20:5 26:18
29:5,21
**discussed** 31:2
**discussion** 7:22
13:11 28:2,5,10
29:12 30:3,5 33:2
34:5 42:2 45:1
**discussions** 22:24
38:8
**docket** 13:22 33:10
33:12
**document** 25:6
33:16,16 34:3
43:7 44:15 47:25
**documents** 6:21,22
6:24 7:2,4,11 8:7
9:7 10:1,4,5 19:5
24:16
**dogs** 22:8,9
**doing** 11:14
**DOROTHEA** 1:21
51:4,18
**draft** 38:19,21
**drafted** 38:22,24
45:24
**drink** 41:19
**Drive** 1:17 2:18
**due** 48:11
**duly** 5:6 51:7
**duties** 11:3 46:24
49:3
**duty** 38:14

---

**E**

**e** 3:1,2 4:1 51:25
**e-mail** 9:19 34:20
48:17
**e-mails** 8:12,19 9:9
**earlier** 12:13 19:5
19:13 31:1 32:11
34:8 35:7 37:22
40:21 41:6
**early** 8:17 9:18
**Easement** 4:10
35:24 38:6
**easily** 25:14
**effect** 12:17,24
46:17

Page 3

effective 43:5
Encino 2:10
enter 44:16
entered 14:14
  45:16
entering 44:12
  45:14,19
entire 23:13 28:16
  38:3
entities 43:4
entity 42:20
equine 24:7
estate 10:17 11:2
  12:7,7 14:4 17:17
  18:3,14 19:17
  22:24 40:13
estimate 23:8
et 8:5 32:14 34:19
everybody 37:23
evict 14:21,24
  15:11 16:2,15
  17:19 26:23 37:18
  37:22 38:2,10,14
  39:25
evicting 17:19
  18:17 37:2 39:6
  40:16
eviction 18:7
evidence 29:9
  30:16 36:19 40:2
  44:15
exactly 23:11
EXAMINATION
  3:5,8 5:10
examined 5:7 51:6
example 12:13
Excuse 41:19
Exhibit 5:20,21
  6:20 24:15,17,21
  24:24 25:24 27:5
  32:19,21 34:7,12
  34:15,21,22 36:4
  38:5 41:6 42:15
  43:5 44:13 45:14
  46:16
exhibits 3:16 8:25
  33:25 35:16
exist 13:24

explain 44:7
explanation 26:7
extent 13:6 14:3
  16:13 18:4 22:20
  24:1,8 26:8

            F

facility 18:6
fact 40:2
facts 29:8 30:16
  36:19 40:19 44:15
fair 10:1 22:21 46:6
  46:10
fall 31:21
family 29:18
far 22:7 23:10,19
  24:9
Farge 38:20
Fargo 36:15 37:6
  43:6
fax 48:17
faxes 8:11
figure 14:20
file 7:14 10:21 11:8
  26:4 33:6
filed 7:7,8 8:9,24
  8:25 12:16,19,23
  16:12 19:1 25:5
  28:22 36:9 39:3
  41:16 42:6
filing 12:1 16:7
  34:1,9
fill 44:24
find 8:5 10:5 26:22
fine 35:4 47:8
fingertips 9:7,9
first 3:17,24 5:6
  10:2 24:22 25:5
  37:13
five 20:20 27:5
  34:25 47:4
focus 33:21
follow 22:14 48:1
follows 5:7 42:4
  45:10
foreclosed 42:20
foregoing 50:8
  51:10

forgotten 37:24
Form 26:1
formed 17:18
former 42:23
forth 51:9
forward 40:24
foundation 17:23
  18:9 32:9
four 20:20 34:25
Fritz 4:7 21:8,9
front 27:7 35:11
full 51:11
further 3:8 46:20
  49:5 51:12

            G

gain 19:3
general 12:6 20:5
  23:24 42:23
generally 9:10
getting 40:9
give 15:9 27:15
  32:18
given 6:11 33:15
  36:4 39:19
gives 10:20
giving 23:2
go 7:20,23 13:8,10
  13:12 14:7 15:10
  23:23 27:22 28:6
  28:8 29:25 30:2,4
  33:19 34:4,6 35:5
  40:5 41:23 44:23
  44:24,24 47:2,5
goes 12:24
going 9:5 15:10
  18:21 20:8,11
  24:14 25:19,21
  41:19 47:5,21,22
  47:23
good 5:13,14 35:5
gotten 8:13 31:3
  40:8
grandkids 22:1
granted 18:23
grazing 20:6
Great 48:23
great-grandchild...

15:25
great-grandkids
  22:1
grown 22:11
guess 20:16,18
GWEN 1:8

            H

hand 16:9
hands 16:3,14
happy 33:18 44:5,7
HARTLEY 1:21
  51:4,18
hearing 26:19
  45:20
held 7:22 13:11
  20:21 28:2,5 30:3
  33:2 34:5 42:2
  45:1
hereinbefore 51:7
hereunto 51:14
hills 19:24
hold 11:20 32:25
hoping 23:10
horse 19:25 20:1
horses 16:22 17:4,7
  17:8 22:6,7
houses 20:14 21:10
  23:3
huge 13:22
hypothetical 17:22
  18:9

            I

idea 26:16
identification 3:18
  5:22 24:18,25
  32:22 34:13,23
identify 20:24
  29:20
improper 18:9
include 11:3 15:24
  21:25
includes 12:4,5
  15:17,18
inclusive 1:10
incomplete 12:11
  14:3 17:22

increase 17:20
  18:18
increased 18:4
increasing 46:17
indicate 26:11
indicated 39:22
indicating 18:3
  40:13
indication 6:7
individuals 32:5
information 3:12
  18:21 22:23 24:11
  40:9,9 41:17 42:7
  42:12 43:21 45:18
initial 5:17
initially 42:17
initiated 42:25
inquiry 44:11
  45:12
INSERTED 3:12
  3:16
insurance 9:17
  12:6 18:24 20:17
  21:1 31:2,2,4,6,6
  31:10,13,14,17,24
intent 38:14
intention 38:1
interested 51:13
Interim 7:6
Interrogatories
  26:1
interruption 7:21
interrupts 11:21
investigator 31:15
involved 9:6 18:22
  31:3
irrelevant 26:8
irrespective 38:3
issue 10:13 11:1
  19:20 20:4 23:9
  23:19 26:24 38:15
  42:16
issued 11:7 36:13
  36:16,21
issues 20:9 40:15
its' 32:13

            J

job 10:18
joined 8:1
judge 11:25 26:20
June 51:15

**K**

K 1:5,15 3:3 4:4 5:5
    5:17 50:20
keep 24:15
KEVIN 2:15,16
kids 21:25
kinda 44:24
Kling 4:7 21:6,8,9
    22:25 23:2 34:8
    39:12,19,22 41:7
    41:9
Kling's 39:14,15
know 6:22 8:11
    12:24 13:15,21
    14:13,18 15:21
    16:5,14 17:4,7,10
    18:1,19 20:8,14
    21:12,15,18,21,24
    21:25 22:1,3,5,7,7
    22:10,11 23:2,5,7
    23:20 25:7 26:25
    28:14 30:20,23,25
    31:25 32:3,10
    36:17,25 37:10,17
    38:13,22,24 39:1
    39:8 40:20,23
    41:2,4,15 42:5
    43:13 44:3 45:25
    46:4,6,14,16,19
    48:17
knowledge 16:6,10
    17:1 24:4 37:14

**L**

L 2:6
lacks 17:23 18:8
    32:8
land 37:4
language 32:13
larger 11:2 33:16
    40:14
Law 2:7,15,17
leave 6:6 28:12

legal 13:14,15
Leslie 1:8,9 6:3,5,9
    7:12,25 9:19 10:9
    12:9 14:18,19,19
    15:18,18 17:7
    24:12,12 29:12,13
    29:16 31:3
Leslies 12:23 31:23
    37:3,19 38:10,14
    39:25 40:16
Leslies' 15:24
Let's 7:20 28:1
    30:2,4 34:4 41:21
    44:23
letters 8:12 9:8
liability 31:6,10
lift 14:10,11
lifted 12:8,25 13:21
    14:10
light 38:16
liquidating 11:4
list 15:9,10 17:16
live 15:21 16:3,18
    21:22,24 24:5
    29:6,13
lived 8:12
lives 24:10
livestock 17:11
    20:6 22:5
living 24:11
located 38:3
lodge 48:20
lodged 48:13
long 39:2
look 6:18 18:24
    25:14 32:25
looked 8:4
looking 18:23
lost 47:17 48:3
lot 33:25

**M**

M-c 5:18
mail 6:6 25:25
    47:22
mailed 47:3
maintain 32:6
maintenance 32:2

making 38:9
March 25:5,25
MARIA 50:3
Marilyn 1:8 10:8
    12:9 14:19 29:13
mark 32:19
marked 5:22 24:18
    24:25 32:22 34:13
    34:23
market 10:1 17:16
    17:16 19:4 39:7
    46:6,10
marking 25:24
maximize 18:13
McBeth 1:5,15 3:3
    4:4 5:5,13,17 6:2
    6:11 8:2 25:3
    27:4 28:9 47:4,22
    50:20
mean 11:1,11 13:23
members 29:18
message 6:7
MICHAEL 2:6
middle 5:17
mind 13:9 18:6
minute 7:20 13:3
    20:22 27:23 34:6
    36:18
Misstates 29:22
    36:19 44:14,15
moment 39:11
money 40:15
month 13:5
months 31:19
morning 5:13,14
motion 33:7,10
    34:1,18 35:17,19
    35:23 36:8 38:18
    39:2 45:18
motions 8:25
move 24:21
moved 14:11
moves 14:10
moving 18:25
multiple 30:17

**N**

N 3:1,2 4:1

nail 28:11
name 5:15 51:15
named 14:18,22
names 16:8
narrow 29:10
necessary 41:13
    47:11 48:20
need 7:16 30:1
neither 51:12
never 6:13 19:14
Nine 38:9 43:10
note 6:1 26:9,17
notes 33:20 51:11
notice 1:23 3:19,21
    5:20 6:19,24 7:6
    24:16 27:6,9,15
    28:13,17 35:8
    36:13,16,20
notified 6:8 47:19
notify 6:5 48:6
notorization 36:6
November 32:20
    36:10 39:2
number 5:21 7:5,8
    9:8 10:6 17:2
    22:2,23 23:8
    24:17,24 32:21
    33:10 34:12,22

**O**

object 14:2 36:18
objection 9:12 11:9
    12:10 13:5 17:21
    18:8 24:1 28:19
    29:8,22 30:15,24
    31:12 32:7 36:18
    37:21 40:1,18
    43:7 44:1,8,14
objections 9:14
obligation 10:24
obligations 18:13
obtain 17:15
obtained 22:23
obviously 26:24
occupants 15:4,7
    15:14
occupying 15:15
off-the-record

28:10 30:5
offhand 9:24 21:20
office 14:16 47:12
offices 2:15 47:25
Okay 6:1,15,18
    7:10,13,16,17 8:6
    8:21 9:2,4,22,25
    10:7,7,11,23 12:8
    12:22 14:6,13,17
    14:24 15:3,8,13
    15:17,24 16:2,11
    16:13,17,20 17:4
    17:10,13 18:2,16
    19:19 20:13,19
    21:10 22:18,19,20
    23:2,8,21 24:9,14
    24:14,20 25:17,20
    25:23 26:5,17
    27:4,9,14 28:15
    28:25 29:4,16,20
    29:24 30:12,21
    31:8,22 32:1
    33:13 35:7,16,23
    36:4,8,12 37:13
    37:18,24 38:5,17
    39:5,19 40:12,21
    41:6,15,23 42:10
    42:13,25 43:19
    44:19,25 45:21
    46:1,5,14
operate 12:3 33:8
    34:2 35:17
operated 18:5
operates 24:7
operating 23:15
    32:12 35:19 36:9
    38:18
operation 12:6
opinion 17:18 18:3
    23:3 39:22 40:13
    41:12
order 11:6,11,18,25
    12:2 17:15 23:15
    32:12,18 39:7
orders 40:4
ordinarily 47:16
original 11:11
    47:12,16,22,24

48:1,3,11,19
**outbuildings** 20:1
**outcome** 51:13
**outline** 20:12
**outside** 28:1,3 45:2
**overly** 9:12 17:21
  24:2 32:8
**owner** 43:12
**owns** 17:7

**P**

**Padilla** 1:9 2:24
  14:19
**page** 3:5 25:23 48:2
**pages** 27:5
**paid** 30:13,22
  31:13,24 32:2,4
  40:22,23
**Paragraph** 41:10
**parcel** 40:14
**parcels** 40:7
**part** 8:22 20:7
  30:10 33:15,21
  35:16
**particular** 9:7,21
**partner** 42:23
**partners** 43:16
**parts** 23:12 40:14
**party** 14:10 38:8
  42:22,23 43:1,12
  51:13
**pay** 29:1 30:8 31:9
**paying** 12:5,5,6
  23:16
**penalty** 49:6 50:6
**pending** 10:8 30:6
  45:7
**people** 15:1,12
  17:19 18:24 21:22
  21:24 24:5 36:15
**period** 28:18
**perjury** 49:7 50:6
**person** 12:19 36:21
  38:2
**personal** 17:1
**personally** 16:25
  19:15,16 27:17,18
  27:20 42:11 46:2

**48:**16
**persons** 14:22
**pictures** 20:3,3,23
  20:23,24 21:3,5
  40:10
**piece** 9:16
**pieces** 8:17
**place** 15:16 31:4,14
  31:16 47:18 51:9
**plaintiff** 1:6 2:3
  13:16 14:5
**plaintiff's** 6:5 26:1
**pleadings** 8:25
  28:21
**please** 5:15 6:19
  19:6,19 32:18
  44:21
**point** 6:10 18:19
  27:1 37:3 39:10
**pool** 9:18
**portions** 36:5
**possession** 11:4
  17:15 26:10,21
**possible** 40:3
**possibly** 20:1,6
  42:21
**prejudgment** 26:10
  26:21
**preliminary** 39:20
**premises** 22:21
**prepared** 47:3
**present** 2:22 8:1
  10:21 38:1
**presented** 45:20
  47:15
**preserve** 41:13
**presume** 15:20
  37:11
**primarily** 21:1
**principal** 15:15
**prior** 27:14 30:6
  31:8 39:14,14,15
  42:22 43:12,12,13
  51:6
**pro** 6:3
**probably** 6:10
  25:12
**proceed** 18:7

**proceedings** 7:21
  27:1 40:17 48:24
**process** 40:11
**produced** 11:24
  19:5 24:16
**producing** 7:3
**professional** 18:3
  40:13
**Proof** 25:24 26:2,6
**properties** 19:17
**property** 8:9,12
  9:18 10:13,16,16
  10:25,25 11:4,4
  12:4,5,7,18 14:21
  15:1,2,3,15 16:3
  16:14,18,21 17:1
  17:5,11,16,16,20
  18:4,18,20,22,24
  18:25 19:3,14,20
  19:23,25 20:15
  21:13,16,18,22,24
  22:3,6,11 23:6,16
  23:18,23,25 24:2
  24:5,6,10 28:12
  29:1,2,7,14,21
  30:13,14,22 31:6
  31:10,14,15,24
  32:2,6 36:2 37:15
  37:19 38:4,15
  39:7,8,12,16,18
  39:20,23 40:7,11
  40:14,23 41:2,13
  41:18 42:9,16,21
  43:22 44:12 45:13
  46:10,15,18
**propose** 46:23
**provide** 38:20
**provided** 18:2,21
  25:3 33:17 36:5
  39:1 40:12 42:14
  43:21 45:18
**public** 8:10,22
  45:19
**purpose** 24:3 26:14
**purposes** 39:8
  47:15,18
**pursuant** 1:23
**pursue** 37:4

**put** 46:7

**Q**

**question** 7:5 9:12
  11:22 12:10,12
  13:18,20 14:3
  17:21 18:8,16,17
  24:1 26:15 27:4
  28:19 29:10 30:6
  30:7,17 32:7
  36:12,25 37:7,10
  37:21 38:5,7 40:1
  44:1,10,16,20,21
  45:4,6,11 46:11
**question's** 13:6
**questions** 8:3 13:13
  13:14 22:15,16
  23:21 25:22 32:17
  35:1,3,6 46:20,21
**quite** 8:15
**quote** 12:2

**R**

**ranch** 10:16 16:3,3
  16:9,13 18:5
  27:16 31:11 46:7
**ranting** 25:16
**read** 33:4 41:24
  42:3 44:21 45:9
**Ready** 45:5
**real** 12:7 18:3
  22:24 40:13
**really** 13:15,19
  26:8 33:20
**Realty** 36:15 38:9
  43:6,10
**Realty/Wells** 37:6
**reason** 37:2 48:12
**reasonable** 48:21
**recall** 9:7,8,10,16
  21:20 35:9 38:7
  38:12,13 39:4
  42:11,15 43:3,17
  43:18,19,21,23,24
  43:25 44:11 45:11
  45:21,23
**receive** 47:23
**received** 8:14 9:19

20:17
**receives** 47:9
**recess** 41:22
**recollection** 20:20
  42:25
**record** 5:16 6:2
  7:22,25 8:10,23
  11:22 13:8,11,14
  24:15 25:2 26:9
  26:18 27:22 28:2
  28:5 29:25 30:2,3
  33:2,6 34:5,16
  42:2,3 44:23 45:1
  45:9,19
**recorded** 34:17
  36:5
**refer** 10:15
**reference** 11:13
  33:25
**REFERENCED**
  3:18
**referencing** 41:10
**referred** 32:12 34:8
**referring** 36:20
**reflect** 25:2
**regard** 9:20 14:4
  18:21
**regarding** 8:8
  10:12
**rehash** 22:15
**related** 20:9 51:13
**relates** 12:1 32:13
  33:17,22 36:1
**relating** 9:17 31:10
**relevant** 44:3
**relieve** 46:23
**relieved** 49:3
**remember** 9:23
  32:15 40:25 41:24
**rent** 23:16,19 29:1
  30:8
**rental** 22:21
**rented** 12:5
**rents** 12:4 23:16,18
  32:14
**repairs** 9:18 12:6
**rephrase** 36:25
**reporter** 5:23 24:19

24:20 25:1 32:23
34:14,24 42:1,4
45:5,8,10 46:24
47:1 48:16 49:2
**reports** 20:17 21:19
**represent** 25:6,7
33:5,14 34:16
**representation**
9:21
**represents** 6:3
**request** 6:4 48:13
48:21
**requested** 6:21
34:20
**requests** 6:23
**required** 14:12
19:2 48:11
**resided** 29:20
**residence** 15:16
**residences** 19:25
**residency** 29:21
**residential** 24:6
37:14
**residents** 8:8 12:18
15:3,14 26:11
27:16 29:1,6 39:6
**resides** 37:20
**residing** 15:1
**responded** 21:11
**responding** 13:17
**response** 7:3,4 20:7
24:16 30:6
**responsibility** 48:9
**responsive** 6:23 7:5
10:5
**return** 47:12
**returned** 47:25
**review** 6:25 20:16
33:18 35:2,4
47:10
**reviewed** 20:23
21:4,19 48:8
**right** 13:19 16:8
26:10,21 35:11
43:4
**rights** 4:9 35:24
37:4,5 38:6 44:13
45:15 46:17

**road** 20:4,23 37:15
**Robert** 1:8 10:8
12:9 14:18 29:12
**Robert/Marilyn**
7:12
**rolling** 19:24
**room** 28:3 45:3
**ROSENTHAL** 2:5
**rough** 23:8
**RPR** 1:21
**running** 30:14

**S**

S 3:2,2
**sale** 39:9 46:8
**Sandra** 1:5,15 3:3
4:4 5:5,17 50:20
**SANTA** 50:3
**satisfy** 39:24 40:15
**saying** 12:17 23:12
**second** 11:21 13:8
25:11 30:1 32:18
32:25 34:4 35:3
**Section** 10:17
**see** 13:23 27:9,12
32:24 34:2,10
35:14 41:9,11,14
**seek** 17:19
**seeking** 14:21,24
15:11 16:2,15
19:21 22:20 28:16
28:23,24
**seen** 16:25 17:1
20:2,2,3 22:17
23:18
**sell** 17:16 38:4 39:7
46:16
**send** 27:15,19,21
**sent** 8:11,16 22:13
25:9 28:13,17
31:20 34:19 47:1
48:15
**separate** 21:21
**September** 27:11
27:14 28:13 33:13
**serve** 27:15
**served** 6:2 25:8,25
26:12,14

**Service** 25:24 26:3
26:6
**set** 51:9
**sets** 21:4
**she'll** 6:10 47:7
**shorthand** 51:10,11
**showing** 25:4 26:6
**side** 37:15
**sign** 47:12
**signature** 48:2
**signed** 11:25 27:10
32:12 34:18 36:21
37:5 47:13 48:2
49:6 50:10
**significantly** 38:15
**signing** 48:10
**Similarly** 12:22
**simple** 13:20
**simply** 15:11
**single** 38:2
**sit** 46:14
**site** 4:9 34:17 35:24
36:15 37:5 38:6
38:17 41:10 42:15
**six** 6:24 40:14
**skip** 23:23
**Smith-Set** 26:1
**sold** 39:23 40:14
**somewhat** 30:5
**sorry** 11:20 13:4
20:15 37:25 39:15
44:22 45:22
**sort** 20:2 24:7
**sought** 23:11,12
**sounds** 8:21
**source** 20:25 21:1
**sources** 41:4
**speak** 40:8
**speaks** 43:7
**specific** 9:8,16 11:6
11:25 23:11 24:10
41:16 42:7,11
**specifically** 8:9
10:13 11:7 14:21
20:14 38:12,13
39:4
**speculation** 17:22
18:10 30:15 32:8

40:2,4,18 43:8
**spell** 5:15
**Square** 1:17 2:18
**ss** 50:2 51:1
**stamped** 7:13 33:7
**start** 27:18
**state** 1:1,22 5:15
43:11 50:1 51:1,4
51:19
**stated** 21:19 26:23
**states** 25:25 26:12
41:10,11
**statute** 11:13
**statutory** 49:3
**stay** 12:8,17,20,23
12:24 13:21 14:2
14:10,11,11 20:11
**step** 28:1
**stipulated** 48:22
**stipulation** 46:23
**stop** 40:16
**strike** 45:22 48:5
**structures** 19:25
20:3,23 21:4,21
23:4 37:14
**stuff** 9:2 13:22
33:20
**sub-tenants** 17:10
**subject** 30:13 36:2
38:10 47:11
**subscribed** 51:15
**substance** 9:10
**suggests** 34:1
**Suite** 1:17 2:9,19
**SUPERIOR** 1:1
**supported** 10:1
**supporting** 33:9
**supposed** 23:17
**sure** 11:22 13:10
22:15 33:23 34:11
42:1 43:4 48:12
**sworn** 5:6 51:7

**T**

T 3:2
**take** 33:19 35:2
38:14 41:21
**taken** 1:16 6:14,15

21:3 51:9,10,11
**talk** 27:24
**talked** 36:14
**taxes** 12:5
**tell** 16:8 25:14 26:2
**Ten** 47:4
**tenancy** 27:6,15
35:8 36:13
**tenants** 14:23 15:1
15:14 16:17
**term** 14:2 15:6,7
**terminate** 27:6,15
35:8 36:13
**terms** 20:24 29:6,9
29:13,21 39:1,5
**testified** 5:7 11:12
20:22 31:1 46:9
**testify** 51:7
**testifying** 43:13
**testimony** 15:13
19:13 29:22 32:11
32:15 35:7 39:5
40:25 44:14
**Thank** 7:18 33:4
48:18
**Thanks** 19:8
**thereof** 51:13
**things** 8:22 19:2
**think** 19:6 23:9
25:13 34:2 35:1
36:24 37:10
**thought** 26:5
**three** 14:22 26:12
26:24
**time** 8:15 19:1
23:23 25:11 28:16
28:17 29:4 35:2
40:20 41:15 42:6
46:5 48:20,21
51:9
**timing** 33:25 38:12
**title** 40:10 42:21
**today** 7:3 9:2 20:18
**told** 23:19 43:24
**tomorrow** 47:6
**top** 33:7
**total** 21:21,25 22:2
**transcribed** 51:10

Page 7

transcript 46:25·
  47:10,12,13,14,16
transcription 51:11
trial 47:5 48:20
trouble 13:17
true 50:8 51:11
trustee 1:5 3:22 7:6
  7:7,12 10:7,11,18
  10:25 18:13 19:8
  29:5,11 30:12,22
  31:9 32:1,4 40:24
truth 51:7,7,8
try 18:13 20:8
  24:14
trying 14:20 22:13
  23:10 26:23 28:10
  33:21 37:2,10
  40:6 46:9,15
turned 23:17
two 9:8,23 47:7,8
two-and-a-half 9:6
  19:11
type 16:20
types 22:5
typewriting 51:10

**U**

UD 20:11
ultimately 18:16
unavailable 47:17
understand 11:23
  12:12 16:22 19:13
  20:7 22:9 23:10
  24:4,6 37:7,9,11
understanding
  10:12,20 19:19,23
  23:24 24:8 36:3
understood 14:13
  14:17 22:16 36:23
  47:14
unforsaken 48:12
unlawful 3:25
  10:13 11:8 12:1
  14:17 17:13 19:20
  24:23 28:22 30:4
  36:2 40:16 44:6
unquote 12:3
unrepresented

8:15
unsigned 47:14
use 14:2 48:7
useable 47:15,16
utility 30:13,17

**V**

value 10:1 17:20
  18:4,18 22:21
  23:3,9 39:8 40:6,7
  41:13 46:7,10,17
valued 39:16
values 39:20
various 12:18 40:7
Ventura 1:2,18 2:8
  2:20 5:2 51:2,4,19
verify 8:4
versus 17:8 28:17
viewing 40:11
views 20:2
visit 39:14,15
voice 6:6
vs 1:7

**W**

W 1:21 3:2 51:4,18
wages 32:5
wait 13:3 14:1,1,1
  36:18 44:1
waive 6:15
waived 47:11
walk 6:10
want 5:20 11:22
  14:1 15:14 18:7
  20:16,18,21 27:24
  32:17,19,25 34:10
  35:1,4 37:11 43:3
  43:13 47:19
wanted 6:22 8:2,11
  12:24 22:14
wanting 37:18
wants 37:22 47:1
wasn't 25:9 26:14
water 4:9 20:4
  30:22 35:24 36:15
  37:5 38:6 40:22
  41:2,4,11,12,17
  41:20 42:8,22,23

43:22 44:12,13
  45:13,15
way 6:7
we'll 6:1 34:16
we're 18:25 25:21
  40:6 46:9 47:5,21
we've 18:20,20
  36:14
Wednesday 1:20
  5:1
weeks 9:20 47:7,8
wells 20:4 36:15
  37:16 38:20 42:16
  43:6
went 25:11 31:15
Wheeler 10:15,16
  27:16 29:14 31:11
  36:1 37:15 41:13
  43:16 46:7
WHEREOF 51:14
wife 16:12
withdraw 37:1
WITHEM 2:5,6
  7:24 9:12 11:9,11
  12:10,15 13:3,5
  14:1,7 15:4,6,9
  17:21,25 18:8
  24:1 25:2,16,18
  25:21 26:4,15
  27:2,24 28:1,6,19
  29:8,22 30:15,24
  31:12 32:7,24
  33:4,14 34:11
  36:18 37:7,21
  40:1,18 41:19
  43:7 44:1,8,14,19
  44:22,25 46:11,22
  47:2,5,21 48:23
witness 6:13 9:16
  9:23 11:16,18
  12:12 13:4,13,25
  14:5 15:5,7 18:1
  18:11 24:4 27:22
  27:25 28:4,7,21
  29:23,25 30:20,25
  31:13 32:10 33:3
  33:17,23 35:5
  37:9 40:6,20 43:9

44:3,6,23 45:2,16
  46:13 47:8 48:7
  49:6 51:6,14
work 16:14 26:25
worked 32:5
workers 16:3
working 21:2 39:10
  40:8,9
written 22:13 47:25

**X**

X 3:1 4:1

**Y**

Yeah 19:7 28:7
year 31:20
years 9:6 19:11
  31:23
Yu 34:19 36:5
  43:14

**Z**

Zeff 2:5 12:15,16
  25:9 27:10

**0**

**1**

1 1:10 3:19 5:20,21
  6:20 8:7 14:20
  26:13
1,700 23:13 24:2
1,700-plus 19:24
1,800 23:14 38:3
10 1:10 14:20 26:13
10:06 1:19 5:1
11:10 1:20 48:25
14 47:13 48:9,16
16027 2:8

**2**

2 3:21 9:25 10:6
  24:15,17 41:10
20 25:25
2009 7:9 19:9 31:23
201 2:9
2010 31:23
2011 27:11,14
  28:13 31:23 32:20

35:13 36:10 39:2
2012 1:20 5:1 25:5
  50:12 51:15
2025.520 49:4
2025.550 49:4
22 25:5 32:20 36:10
22nd 39:2
24 3:22,22,25,25
255 33:11,12
28th 27:11,14
  28:13 35:13

**3**

3 3:24 24:21,24
  25:24 27:5
30 1:20 5:1
300 10:2 22:20
  23:13 28:16
310 1:17 2:19
32 4:4,4
34 4:7,7,10,10
3rd 7:8

**4**

4 4:3 7:5 32:19,21
  35:16

**5**

5 3:6,19,19 4:6 34:7
  34:12 35:16 41:6
541 10:17
5505 1:21 51:4,18
56-2012-00410681-
  1:7

**6**

6 4:9 34:15,21,22
  36:4 38:5 42:15
  43:5 44:13 45:14
  46:16
60-day 27:5,9
  28:13 35:8 36:12
  36:16,20
674 1:17 2:18
6th 51:15

**7**

7 1:5 7:12 10:7,11
  10:18 14:14 16:12

DOROTHEA W. HARTLEY AND ASSOCIATES, INC.      805-643-4007

| | |
|---|---|
| 19:8 | 29:5,11 |
| 7th | 7:9 |

**8**

| | |
|---|---|
| 81,000 | 23:9 |

**9**

| | |
|---|---|
| 9,000 | 23:13 |
| 9:08-BK-11949 | 7:8 |
| 91436 | 2:10 |
| 93003 | 1:18  2:20 |

# DOROTHEA W. HARTLEY & ASSOCIATES, INC.
## CERTIFIED SHORTHAND REPORTERS

| Page | Line | Deposition Notes |
|------|------|------------------|
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |
|      |      |                  |